Filed 1/14/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

In re ALBERT A. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063869 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J253936 & J253937) |
| v. | OPINION |
| KIMBERLY L., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Lynn M. Poncin and Cheryl C. Kersey, Judges. Affirmed in part; reversed in part with directions.

Rosemary Bishop, under appointment by the Court of Appeal, for Defendant and Appellant.

_____

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III, sections C., D., E., and F.

1

Jean-Rene Basle, County Counsel, and Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Kimberly L. (mother) appeals from orders under Welfare and Institutions Code[1] section 366.26 terminating her parental rights to Albert A. (A.A.) and Veronica A. (V.A.) (the children). Mother contends: (1) the juvenile court's jurisdictional orders finding the children were dependents within the meaning of section 300, subdivision (b)(1), were not supported by substantial evidence; (2) the juvenile court abused its discretion by terminating reunification services and setting a section 366.26 permanency planning hearing; (3) the juvenile court abused its discretion by denying mother's request to continue the permanency hearing to allow her time to file a petition under section 388 requesting additional reunification services; (4) the juvenile court's orders finding the children were likely to be adopted were not supported by substantial evidence; and (5) the juvenile court erred by concluding legally sufficient notice was provided to relevant Indian tribes pursuant to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA).

Respondent San Bernardino County Children and Family Services (CFS) argues mother waived her right to challenge the jurisdictional orders by not appealing from the dispositional orders, and mother waived her right to challenge the orders terminating

---

[1] Unless otherwise indicated, all additional statutory references are to the Welfare and Institutions Code.

reunification services by not filing a petition for extraordinary writ challenging the orders setting a permanency hearing. CFS contends the juvenile court did not abuse its discretion by not continuing the permanency hearing. Although CFS concedes the juvenile court did not consider a possible legal impediment to the children being adopted by their paternal grandmother, CFS contends the court correctly found they were likely to be adopted. Finally, CFS concedes the ICWA notice was inadequate and that a conditional reversal and limited remand to provide adequate notice is appropriate.

In the published portion of this opinion, we conclude mother waived her claim of error regarding the jurisdictional orders by not appealing from the dispositions. Mother was absent from the continued jurisdictional hearing and was not entitled to notice of her right to appeal under California Rules of Court, rule 5.590(a).[2] Because we conclude the juvenile court did not provide mother with timely and adequate notice of her right to challenge the orders setting a permanency hearing, as mandated by rule 5.590(b), mother did not waive her claim of error respecting the termination of reunification services.

In the unpublished portion of this opinion, we conclude the juvenile court did not abuse its discretion by terminating reunification services or by denying a request to continue the permanency hearing because mother did not comply with her case plan and did not visit with the children. However, we agree with mother that the juvenile court erred by not considering legal impediments to the children being adopted by their paternal grandmother when it found the children were likely to be adopted, and we agree

---

[2] All additional references to rules are to the California Rules of Court.

3

with mother and CFS that the ICWA notice was inadequate. Therefore, we reverse the orders terminating parental rights and remand for the juvenile court to consider legal impediments to the children being adopted, for CFS to provide new ICWA notice, and for the juvenile court to determine whether that notice is sufficient.

## II.

## FACTS AND PROCEDURAL HISTORY

### A.     *Referral to CFS and Detention*

CFS received a referral alleging general neglect of the children when mother appeared at V.A.'s elementary school and acted strangely. Mother requested V.A. be called from her classroom so mother could take her to juvenile hall. The school principal reported the incident to law enforcement. V.A. told school officials that earlier in the morning mother told her to change her clothing because she did not approve of her jeans. V.A. said mother became irate, grabbed her, and tried to force her into mother's car to take her to juvenile hall. The children's father[3] intervened and told V.A. to run to school. Mother admitted to the school principal she was under the influence of methamphetamines. Law enforcement officers who responded also observed mother was under the influence of methamphetamines, and placed her under arrest. The referral also stated both mother and the father used methamphetamines and lived in the children's paternal grandmother's garage.

---

[3] The father is not a party to this appeal.

The paternal grandmother told the social worker she was concerned about the children's welfare because the parents used drugs and would leave for days at a time without telling the paternal grandmother when they would return or how they could be contacted. The parents would leave the children in the paternal grandmother's care, but would not provide resources or provisions for the children. The paternal grandmother also told the social worker she was concerned about mother's mental health because she acted strangely. Finally, the paternal grandmother told the social worker she wished to continue caring for the children.

When interviewed, mother told the social worker the paternal grandmother kicked mother out of the house and she did not have a permanent place to stay. However, mother told the social worker she could stay at the home of the children's maternal grandfather as long as she did not use drugs. Mother admitted she used methamphetamines on a daily basis, but told the social worker she had not used since her arrest. Although mother told the social worker she was not under the influence of drugs during the interview, the social worker reported mother had "pressured speech, flight of ideas, paranoid ideations, [and] auditory hallucinations." Mother told the social worker she experienced visual hallucinations in the past, and reported experiencing an auditory hallucination earlier that day. While standing on a balcony, smoking a cigarette, mother heard a voice say, "Jump! Just do it." Mother denied she was suicidal.

Although mother told the social worker she would seek drug treatment and would follow through with a mental health assessment, the social worker reported mother lacked insight into how her drug use and behavior affected the children. Mother did not believe

5

her behavior was attributable to her drug use, and instead attributed the change in her behavior to the fact a ruby was stuck in her body. The social worker reported this appeared to be "a paranoid ideation and tactile hallucination of 'feeling like something is in her body.'" The social worker reported her concern that mother's drug use, hallucinations, and inability to provide for the children placed them at risk of harm, and her erratic behavior was disruptive to the children's school and living situations.

During a "team decision making" meeting, mother experienced sporadic hallucinations, became irate, and walked out of the meeting. When it was decided the father would care for the children and take them to the paternal grandmother's home, mother began shouting obscenities at A.A. and the paternal grandmother. CFS concluded mother's mental health issues and substance abuse placed the children in imminent risk of harm, and concluded the children should not remain in the custody of the parents or the grandparents. An officer with the San Bernardino Police Department served a detention warrant, and the children were detained and placed in the custody of CFS.

In petitions filed with the juvenile court, CFS alleged the children were dependents within the meaning of section 300, subdivision (b)(1), because mother and the father's substance abuse, as well as mother's history of mental health issues, rendered them unable to properly and appropriately care for the children. CFS also alleged the children suffered severe emotional damage as a result of mother's verbal abuse during a psychotic episode, within the meaning of section 300, subdivision (c). CFS recommended the juvenile court order the children be detained and placed in foster care.

6

Mother appeared for the detention hearing, during which her appointed attorney entered a denial of the allegations and requested the juvenile court appoint a guardian ad litem for mother. The juvenile court appointed a guardian ad litem for mother, made a prima facie finding that the children were dependents within the meaning of section 300, and ordered the children detained and placed in foster care. The court ordered mother to submit to random drug testing, and ordered supervised visitation with the children a minimum of once a week for two hours. CFS was ordered to provide reunification services to mother and the children. At CFS's request, the court ordered unsupervised visitation by the paternal grandmother.

B.      *Jurisdictional and Dispositional Orders*

In the report submitted for the jurisdictional hearing, the social worker stated neither parent had made contact with CFS since the children's removal. The social worker spoke to the paternal grandmother, who said the father's whereabouts were unknown and mother was hospitalized in the psychiatric unit at San Bernardino Community Hospital. The paternal grandmother also reported mother planned on entering a residential treatment program upon release from the hospital.

Although the social worker stated mother's entry into a psychiatric facility was a significant step toward addressing her mental instability, the social worker continued to express concern that mother's mental health issues and her unstable lifestyle had a detrimental impact on the children's emotional well-being. The social worker also reported the children displayed deficits in their education and basic life skills. Finally, the social worker reported the paternal grandmother was a consistent source of support

7

for the children, and she was being assessed as a potential caretaker for the children. CFS recommended the juvenile court find true the allegations in the petitions, declare the children to be dependents, order the children to remain in their current placement and not be returned to their parents, and approve the case plan prepared for mother.

Mother did not appear for the continued jurisdictional hearing. Without objection, the juvenile court received into evidence the social worker's detention and jurisdictional reports. Mother's counsel objected to the allegations in the petitions, but offered no affirmative evidence. The juvenile court found true the allegations of neglect under section 300, subdivision (b)(1). On the allegations of severe emotional damage within the meaning of section 300, subdivision (c), mother's counsel argued what mother said to the children might not have been nice but did not have "any lasting effect on the [children] to rise to the level of emotional abuse." The juvenile court agreed mother did not cause the children to experience serious emotional damage, and found the allegation not true. The court declared the children to be dependent children.

With respect to the disposition, the juvenile court ruled continuance of the children in the parents' home was contrary to the children's welfare, reasonable efforts had been made to prevent or eliminate the need to remove the children, and the children were to be placed with the paternal grandmother. Mother did not appeal from the disposition.

C.    *ICWA Notice*

The social worker's report for the detention hearing indicated ICWA might apply to the children. At the detention hearing, mother's guardian ad litem informed the juvenile court mother believed she had Indian ancestry through her father (the children's

8

maternal grandfather), and mother submitted a Judicial Council form ICWA-020 indicating she may have Indian ancestry. CFS gave notice of the proceedings to the Bureau of Indian Affairs (BIA) and to 27 California Indian Tribes. The notices included mother's name, current address, and her date of birth. The notices also included the maternal grandfather's name and current address, but did not include the date and place of his birth.

When CFS reported that none of the Indian tribes who responded had concluded the children were members or eligible for membership in the tribes, the juvenile court found that proper ICWA notice had been given.

D. *Six-month Review Hearing and Order Setting Permanency Hearing*

In a status review report, the social worker reported mother's whereabouts were unknown and she had only made contact with CFS three times in the prior five months. The social worker asked mother to provide a mailing address, but mother said she was homeless. The paternal grandmother told the social worker she did not know where mother or the father resided. She further reported she would only hear from mother about every three months, and mother had not once visited with the children since they were placed in the paternal grandmother's care. The social worker reported the children continued to do well in the paternal grandmother's care and in school, and V.A. told the social worker that "she is okay with her grandmother becoming her adoptive parent."

The social worker informed the juvenile court the current plan was for the paternal grandmother to adopt the children, and recommended the juvenile court terminate reunification services and set a permanency planning hearing under section 366.26.

9

At the six-month review hearing conducted on November 12, 2014, mother's counsel informed the juvenile court mother's whereabouts were still unknown and "[t]here is no address in the report or contact information." Mother's counsel acknowledged the social worker's report indicated mother had not visited the children in six months, which was the basis of the recommendation for terminating reunification services. However, counsel asked the court to consider providing mother with an additional six months of reunifications services. "A lot of things can change in six months. The children are over the age of three. If not, I would object." Mother's counsel also indicated it was unclear "what the wishes of the children are in terms of mom having six more months of services or not."

The juvenile court stated that the social worker's report indicated V.A. was "okay with her grandmother becoming the adoptive parent." When asked if that was correct, V.A. responded, "Yes." Based on the information included in the social worker's report, the juvenile court found no reason to continue reunification services. Counsel for CFS concurred with the court's assessment, and counsel for the children agreed, stating, "although [the children] probably would like more time for the mom, I don't see where there is any likelihood of reunifying within the continuing review period." In response, mother's counsel asked the juvenile court to order CFS to assess the parental grandmother for both guardianship and adoption. Counsel for the children and for CFS agreed that all options should be considered.

The juvenile court adopted the social worker's recommendations, findings and orders, found that mother had failed to visit and maintain contact with the children during the last reporting period, terminated reunification services, limited mother's supervised visits with the children to once a month, and set a permanency hearing under section 366.26.  The court directed the clerk of the court to "send notice of intent to file a writ and the writ petition to the parents by first class mail to the last known address."

Five days after the six-month review hearing, the clerk of the juvenile court served mother by first class mail with copies of Judicial Council forms JV-820 ("Notice of Intent to File Writ Petition") and JV-825 ("Petition For Extraordinary Writ").  The clerk mailed the forms to an address on 6th Street in San Bernardino.  Almost two months later, the United States Postal Service returned the envelope to the juvenile court, marked "RETURN TO SENDER."  Handwritten on the envelope are the words, "Not live here." Mother did not file a notice of intent to file a petition for extraordinary writ challenging the order setting a permanency hearing.

E.      *Permanency Hearing and Termination of Parental Rights*

In a report filed for the permanency hearing, the social worker reported that mother's first visit with the children was on March 3, 2015, almost four months after the juvenile court had set the permanency hearing.  Mother did not appear for the next scheduled monthly visit, but showed up the next day, telling the social worker "she had her days mixed up."  The social worker rescheduled the visit.

11

The social worker reported the children were suitable for adoption by the paternal grandmother. Although at first the paternal grandmother preferred guardianship to establish permanency for the children, she changed her mind when she realized adoption would provide her with more control in raising the children without the interference of extended family members, and because the children expressed their preference for adoption. The social worker requested a continuance of the permanency hearing to allow for assessment of the paternal grandmother as the prospective adoptive parent. The juvenile court granted the request.

In an addendum report, the social worker reported the paternal grandmother was nurturing, employed, and had no medical issues. The paternal grandmother's home was located in a quiet neighborhood, nicely furnished, well maintained, and close to parks, schools, shopping, and emergency facilities. The paternal grandmother occasionally drinks alcohol socially, and reported having no counseling or psychological evaluations. The paternal grandmother told the social worker she is able and willing to meet the children's social, medical, psychological, and financial needs, and understands the responsibilities she will be taking on. The paternal grandmother also expressed her belief she is the person best suited to adopt the children, and the children told the paternal grandmother they would rather she adopt them than be their guardian.

The social worker reported the paternal grandmother had no criminal or child abuse history. However, the social worker reported the paternal grandmother is still married to her estranged husband, so legal proof of the husband's consent was needed to proceed with adoption. The social worker recommended the juvenile court find that the

children are appropriate for adoption and select adoption as the permanent plan; find that termination of mother's parental rights would not be detrimental to the children; and find inapplicable the benefit exception to termination of parental rights under section 366.26, subdivision (c)(1).

At the June 9, 2015, continued permanency hearing, mother filed documentation of her attendance at Narcotics Anonymous (NA) meetings. Counsel for mother requested a continuance of the hearing so mother could file a petition for change of order pursuant to section 388, but stated she was prepared to proceed if the juvenile court was not inclined to continue the hearing. The juvenile court denied the request and directed counsel to file a petition under section 388 forthwith. The court noted the permanency hearing had originally been set for March 12, 2015, indicated that it had already been continued once, and stated: "It's now June 9th. If the mother was going to file a [section] 388 petition, she had plenty of time to do so before today's date." Mother's counsel objected, but indicated she was prepared to proceed with a contested hearing.

Without objection, the juvenile court received into evidence the social worker's report and addendum report. Mother's counsel objected to the recommendation of terminating parental rights, and asked the juvenile court to consider legal guardianship as a lesser alternative to adoption. Counsel argued the paternal grandmother had initially expressed a preference for guardianship, and mother had made progress in her substance abuse treatment as demonstrated by the documentation submitted to the juvenile court. Mother's treatment, according to counsel, showed mother had "made progress in becoming more stable and more able to interact with her children." Counsel also argued

13

that mother's recent visits with the children went well and again requested the juvenile court consider legal guardianship and grant mother additional visitation so "she might in the future have an opportunity to file a 388 to request return of the children." Because the children are older and have an established relationship with mother, counsel asked the juvenile court not to sever mother's relationship with the children.

Counsel for the children informed the juvenile court both children agreed with the social worker's recommendation of adoption by the paternal grandmother, and informed the court she saw no evidence termination of mother's parental rights would be detrimental to the children.

Counsel for CFS argued the children were generally and specifically adoptable and, given the children's ages, stated CFS would not have recommended termination of parental rights if the children were not in agreement. Counsel stated V.A. was 13 years old and could have vetoed the termination of parental rights, so the recommendation was in the best interests of the children. Moreover, counsel argued the children would remain in their extended family and their family relationship would continue. Finally, counsel argued there was no evidence to support finding an exception to the preferred permanent plan of adoption.

The juvenile court stated it "considered the wishes of each child consistent with each child's age," and found by clear and convincing evidence each child is likely to be adopted. The court therefore terminated mother's parental rights, selected adoption as the children's permanent plan, and referred each child to the California Department of Social Services or to a local, licensed adoption agency for placement.

14

Mother timely appealed.

## III.

## DISCUSSION

A.      *Mother Waived Her Challenge to the Jurisdictional Findings by Not Timely Appealing from the Dispositions*

Mother contends there is no substantial evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b)(1), and argues she did not waive her right to assert those claims of error.  CFS contends mother waived her right to challenge the jurisdictional orders by not timely appealing from the disposition.  We agree with CFS.

"'Dependency appeals are governed by section 395, which provides in relevant part:  "A judgment in a proceeding under [s]ection 300 may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ."  [¶]  This statute makes the dispositional order in a dependency proceeding the appealable "judgment."  [Citation.]  Therefore, all subsequent orders are directly appealable without limitation . . . .  [Citations.]  A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.'  [Citation.]  This 'waiver rule' holds 'that an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order,' even when the issues raised involve important constitutional and statutory rights.  [Citation.]"  (*In re Z.S.* (2015) 235 Cal.App.4th 754, 769-770.)

15

Mother does not dispute she did not appeal from the dispositional orders, but she argues the waiver rule is inapplicable because the juvenile court did not advise her of her right to appeal. Rule 5.590(a) provides: "If at a contested hearing on an issue of fact or law the court finds that the child is described by Welfare and Institutions Code section 300, 601, or 602 or sustains a supplemental or subsequent petition, the court after making its disposition order other than orders covered in (b) must advise, orally or in writing, the child, if of sufficient age, and, if present, the parent or guardian of: [¶] (1) The right of the child, parent, and guardian to appeal from the court order if there is a right to appeal; [¶] (2) The necessary steps and time for taking an appeal; [¶] (3) The right of an indigent appellant to have counsel appointed by the reviewing court; and [¶] (4) The right of an indigent appellant to be provided with a free copy of the transcript."

The courts have consistently held that when a parent is not properly advised of his or her right to challenge the setting order by extraordinary writ, and consequently the parent does not timely file a writ petition, good cause exists to consider issues relating to the setting hearing in an appeal from the order terminating parental rights. (*In re Frank R.* (2011) 192 Cal.App.4th 532, 539; *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1110; *In re Harmony B.* (2005) 125 Cal.App.4th 831, 839 [Fourth Dist., Div. Two]; *In re Maria S.* (2000) 82 Cal.App.4th 1032, 1038; *In re Rashad B.* (1999) 76 Cal.App.4th 442, 450; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722-726.)

Recently, this court extended the reasoning from those decisions to the juvenile court's failure to advise a parent under rule 5.590(a) of her right to appeal from the disposition when the mother's presence was not disputed. (*In re A.O.* (2015) 242

16

Cal.App.4th 145, 147-149 [Fourth Dist., Div. Two].) We held "that a [juvenile] court's failure to provide the appeal advisement contained in the same rule of court as the writ advisement is a '"special circumstance[] constituting an excuse for failure to [timely appeal]."' [Citation.]" (*Id.* at p. 149.)

If the juvenile court in this case was required to notify mother of her right to appeal from the dispositional orders, this court's decision in *In re A.O.*, *supra*, 242 Cal.App.4th 145 dictates a finding of good cause to consider mother's challenge to the jurisdictional orders in this appeal. CFS contends we should not find good cause because the juvenile court was *not* required to advise mother of her right to appeal under rule 5.590(a) for two reasons: (1) the jurisdictional hearing was not "contested"; and (2) mother was not "present" at the hearing. We disagree with the first assertion, but agree with the second.

Unless waived, the juvenile court at the jurisdictional hearing must read and explain the allegations in the petition and advise the parent of her rights at the hearing. (Rule 5.682(a), (b).) If the parent admits the allegations in the petition or pleads no contest to them, the hearing is not contested and the juvenile court is required to enter an order finding the children are dependents pursuant to section 300. (Rule 5.682(c)-(f).) In that case, there is no requirement that the juvenile court advise the parent of her right to appeal. (Cf. *In re Joseph B.* (1983) 34 Cal.3d 952, 959 [former rule 251 (current rule 5.590(a)) did not require advisement of appeal rights when minor admitted allegations of delinquency petition].) "If the parent or guardian denies the allegations of the petition,"

17

however, "the court must hold a contested hearing and determine whether the allegations in the petition are true." (Rule 5.684(a).)

"By submitting on a particular report or record, the parent agrees to the court's consideration of such information as the only evidence in the matter. Under such circumstances, the court will not consider any other evidence in deciding whether the allegations are true. [Citation.] [¶] Notwithstanding a submittal on a particular record, the court must nevertheless weigh evidence, make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved. [Citation.] In other words, the parent acquiesces as to the state of the evidence yet preserves the right to challenge it as insufficient to support a particular legal conclusion. [Citation.]" (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589.)

Mother offered no affirmative evidence and did not object to the juvenile court receiving into evidence the social worker's report, but her attorney affirmatively objected to the allegations in the petition and did not submit on the social worker's recommendations. "Only when a parent submits on a social worker's recommendation does he or she forfeit the right to contest the juvenile court's decision if it coincides with that recommendation. [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 136.) Because mother objected to the allegations in the petition and did not agree with the social worker's recommendations, she "contested" the jurisdictional findings for purposes of rule 5.590(a). (*In re A.O.*, *supra*, 242 Cal.App.4th at p. 149.)

18

Although we conclude the jurisdictional hearing was contested, the juvenile court was not required to advise mother of her right to appeal the dispositional orders because she was not present at the continued jurisdiction hearing. Rule 5.590(a) requires the juvenile court to provide oral or written notice of appeal rights to "the child, if of sufficient age, and, *if present,* the parent or guardian . . . ." (Italics added.) Mother argues "[i]t does not make sense to interpret the provision as requiring no notice of appeal rights, simply because the parent is not present," and instead suggests this court should interpret rule 5.590(a) to require notice to absent parents. Mother's suggested interpretation violates the general rules of statutory interpretation, which we use when interpreting the California Rules of Court. (*Alan v. American Honda Motor Co.*, *Inc.* (2007) 40 Cal.4th 894, 902.)

When interpreting a rule, we first look to the words of the rule to ascertain the intent of the drafters and give effect to their plain meaning.[4] (*In re Joshua A.* (2015) 239 Cal.App.4th 208, 214-215.) If the language of the rule is clear and unambiguous, we must presume the drafters meant what they said and the plain meaning of the rule governs. (*Id*. at p. 215.) The language of rule 5.590(a) is clear and unambiguous—the juvenile court is only required to advise a parent of her appeal rights if she is present at the jurisdictional hearing. Adopting mother's interpretation would render the language "if present" in rule 5.590(a) to be surplusage, a result we must avoid. (*In re Joshua A.*, at p. 215.)

---

[4] After oral argument, we requested the parties submit supplemental briefs addressing the proper interpretation of rule 5.590(a).

Rule 5.590(a)'s history supports our interpretation. Rule 5.590(a) traces its origin to former rules 251 and 1435(d).[5] (23 pt. 1B West's Ann. Court Rules (2006 ed.) foll. rule 5.590, p. 573; 23 pt. 1B West's Ann. Court Rules (2015 supp.) foll. rule 5.590, p. 367.) Former rules 251 and 1435(d), which since their adoption applied to juvenile dependency cases,[6] always limited advisement of appeal rights to parents who were present for the jurisdiction hearing. (E.g., *In re Ryan R.* (2004) 122 Cal.App.4th 595, 599 [because mother was not present for the permanency hearing, she was not entitled to advisement under former rules 1463(h) and 1435(d) of her right to appeal from termination of her parental rights]; *In re Arthur N.* (1974) 36 Cal.App.3d 935, 940 [quoting former rule 251].) The fact that advisement of a parent's right to appeal from the disposition has always been predicated on presence at the jurisdictional hearing, despite numerous opportunities for the Judicial Council to provide otherwise, is strong evidence that the plain language of rule 5.590(a) accurately expresses the intent of its drafters.

---

[5] Former rule 1435 became former rule 5.585, which in turn was amended and renumbered as rule 5.590. (23 pt. 1B West's Ann. Court Rules (2015 supp.) foll. rule 5.590, pp. 366-367.)

[6] As originally adopted, effective July 1, 1973, former rule 251 applied "[i]n juvenile court proceedings in which the minor is found to be a person described by Section 600, 601, or 602 of the Welfare and Institutions Code . . . ." (*In re Arthur N.*, *supra*, 36 Cal.App.3d at p. 940.) At the time, former section 600 governed juvenile dependency proceedings. (Stats. 1971, ch. 1729, § 1, p. 3676.) The Legislature subsequently repealed former section 600 and enacted section 300. (Stats. 1976, ch. 1068, § 6, p. 4759 & § 20, p. 4782.) Effective July 1, 1978, the Judicial Council amended former rule 251 to substitute section 300 for former section 600. (Historical Notes, 23 pt. 1B West's Ann. Court Rules (2006 ed.) foll. rule 5.590, pp. 573-574.)

Moreover, when interpreting rule 5.590(a), we must read the rule as a whole. (*In re Joshua A.*, *supra*, 239 Cal.App.4th at p. 215.) When a juvenile court sets a hearing under section 366.26, it must give oral notice of the right to file an extraordinary writ "to those present" and provide written notice to "any party who is not present . . . ." (Rule 5.590(b)(1), (2).) We must assume the drafters of rule 5.590(b) knew what they were doing when they required advisement of writ review rights to absent parents but did not similarly require advisement of appeal rights to absent parents.[7]

---

[7] Rule 5.590(b) implements a specific legislative mandate that the Judicial Council adopt a rule to ensure a parent is given notice of the right to challenge by extraordinary writ an order setting a permanency hearing. (§ 366.26, subd. (*l*)(3)(A).) No similar legislative directive governs the giving of notice to parents of the right to appeal from the dispositional order. (See § 395.)

We may easily surmise the reason behind this distinction. An order setting a permanency hearing under section 366.26 places a parent in immediate peril of losing his or her parental rights, and the need to timely bring an appellate challenge is paramount. Providing notice of the right to challenge the order to an absent parent is an additional layer of protection to the parent's rights. In contrast, except for in those limited circumstances where the juvenile court finds jurisdiction but bypasses reunification services and immediately sets a permanency hearing (in which case the parent in entitled to notice under rule 5.590(b) whether or not they are present), a jurisdictional finding does not place a parent in immediate peril of losing her or her parental rights. The parent will have a period of reunification services, and the ability to establish fitness and prevent the setting of a hearing under section 366.26. Because failure to timely appeal from the jurisdictional order is not of the same magnitude as failure to challenge the order setting the permanency hearing, the Legislature and Judicial Council could reasonably conclude notice need not be given to parents who are absent from the jurisdictional hearing.

21

Notwithstanding the plain language of rule 5.590(a), mother contends she was entitled, as a matter of constitutional due process, to notice of her right to appeal the disposition. We decline to find a due process exception to the application of the waiver rule in this case. (E.g., *In re Janee J.* (1999) 74 Cal.App.4th 198, 208 ["the waiver rule will be enforced unless due process forbids it"].) "Parents are entitled to due process notice of juvenile court proceedings affecting the care and custody of their children, and the absence of due process notice is a 'fatal defect' in the juvenile court's jurisdiction." (*In re Claudia S.* (2005) 131 Cal.App.4h 236, 247, quoting *In re B.G.* (1974) 11 Cal.3d 679, 688-689.) There is no dispute mother was present for the detention hearing and original jurisdiction hearing and consequently had actual notice of the continued jurisdictional hearing. Mother cites no decision holding due process requires that a parent who is absent from the jurisdiction hearing must be given notice of his or her right to appeal from the disposition.

Moreover, mother does not contend she was actually ignorant of her right to appeal from the disposition, she does not contend she would have actually appealed the disposition had she been advised of her right to appeal, and she did not attempt to file a late notice of appeal. (*In re Arthur N.*, *supra*, 36 Cal.App.3d at pp. 938-941 [minor's failure to timely appeal jurisdictional order under § 602 was excused where the juvenile court failed to advise minor of his rights to appeal and to appointed counsel on appeal; minor was actually ignorant of appellate rights and diligently filed a late notice of appeal once he learned of his appeal rights].)

In sum, we conclude the juvenile court was not required to advise mother of her right to appeal the dispositional order.  Because mother did not appeal the disposition, she may not challenge the jurisdictional finding in this appeal from the termination of parental rights.

B.     *Although Mother Did Not Challenge Orders Made At the Setting Hearing by Petition for Extraordinary Writ, Good Cause Exists to Address Her Claim of Error in This Appeal*

Mother did not challenge the setting order by filing a petition for extraordinary writ, but she argues there is good cause to consider her claim of error on appeal from the order terminating parental rights because the juvenile court did not give her notice of her right to file such a petition.  We agree.

"Section 366.26, subdivision (*l*), provides that an order setting a section 366.26 hearing 'is not appealable at any time' unless '[a] petition for extraordinary writ review was filed in a timely manner,' the petition raised the substantive issues and they were supported by an adequate record, and the writ petition 'was summarily denied or otherwise not decided on the merits.'  (§ 366.26, subd. (*l*)(1); see § 366.26, subd. (*l*)(2).)  This writ requirement is implemented by the California Rules of Court.  (See § 366.26, subd. (*l*)(3); rules 8.450, 8.452; see also rule 8.403(b)(1).)"  (*In re A.H.* (2013) 218 Cal.App.4th 337, 346.)  "Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section."  (§ 366.26, subd. (*l*)(2).)

23

"When the court orders a hearing under Welfare and Institutions Code section 366.26, the court must advise all parties and, if present, the child's parent, guardian, or adult relative, that if the party wishes to preserve any right to review on appeal of the order setting the hearing under Welfare and Institutions Code section 366.26, the party is required to seek an extraordinary writ by filing a *Notice of Intent to File Writ Petition and Request for Record* (*California Rules of Court*, *Rule 8.450*) (form JV-820) or other notice of intent to file a writ petition and request for record and a *Petition for Extraordinary Writ* (*California Rules of Court*, *Rules 8.452, 8.456*) (form JV-825) or other petition for extraordinary writ." (Rule 5.590(b).)

Notice of the parent's right to writ review of the setting order "must be given orally to those present when the court orders the hearing under Welfare and Institutions Code section 366.26." (Rule 5.590(b)(1).) If the parent is not present for the setting hearing, notice must be given "[w]ithin one day after the court orders the hearing under Welfare and Institutions Code section 366.26, [and] the advisement must be sent by first-class mail by the clerk of the court to the last known address of any party who is not present when the court orders the hearing under Welfare and Institutions Code section 366.26." (Rule 5.590(b)(2).) The notice "must include the time for filing a notice of intent to file a writ petition," and copies of Judicial Council forms JV-825 and JV-820 "must accompany all mailed notices informing the parties of their rights." (Rule 5.590(b)(3), (4).)

24

As noted, *ante*, notwithstanding a parent's failure to file a petition for extraordinary writ after the setting hearing, the courts have found good cause to address the merits of a challenge to orders made at the setting hearing in an appeal from the order terminating parental rights when the juvenile court did not adequately inform the parent of their right to file a writ petition. (*In re Frank R.*, *supra*, 192 Cal.App.4th at p. 539; *In re Lauren Z.*, *supra*, 158 Cal.App.4th at p. 1110; *In re Harmony B.*, *supra*, 125 Cal.App.4th at p. 839; *In re Maria S.*, *supra*, 82 Cal.App.4th at p. 1038; *In re Rashad B.*, *supra*, 76 Cal.App.4th at p. 450; *In re Cathina W.*, *supra*, 68 Cal.App.4th at pp. 722-726.) Mother contends good cause is shown here to excuse her failure to timely file a writ petition because the written notice sent to her was incomplete, untimely, and was not mailed to her last known address. We conclude the notice to mother was untimely and was not mailed to an address where she would likely receive it.

Mother was not present at the six-month review hearing conducted on November 12, 2014, when the juvenile court terminated reunification services and set the permanency hearing. After setting the permanency hearing, the juvenile court directed the court clerk "to send notice of intent to file a writ and the writ petition to the parents by first class mail to the last known address." On November 17, 2014, a deputy clerk of the juvenile court served mother by first class mail with copies of Judicial Council forms JV-825 and JV-820. The clerk mailed the forms to mother at an address on 6th Street in San Bernardino. On February 9, 2015, the forms were returned to the juvenile court by the United States Postal Service marked "RETURN TO SENDER," and handwritten on the envelope are the words, "Not live here."

25

With respect to the content of the notice, mother contends the juvenile court did not comply with rule 5.590(b) because the clerk merely mailed blank copies of Judicial Council forms JV-825 and JV-820. Mother argues the juvenile court was required to also mail her a separate notice of writ review rights, a copy of the minute order indicating the date of the permanency hearing, and to inform her of the date on which a notice of intent to file a writ petition had to be filed.

True, rule 5.590(b) requires an advisement of writ review rights *accompanied* by copies of Judicial Council forms JV-825 and JV-820. (Rule 5.590(b)(4).) However, by itself form JV-820 sufficiently informed mother: (1) the juvenile court "decided it will make a permanent plan for this child that may result in the termination of your parental rights and adoption of the child"; (2) if mother wished to challenge that decision she was required to file a notice of intent; and (3) because she was absent when the juvenile court set the permanency hearing, mother was required to file her notice of intent within 12 days of the date the court clerk mailed the forms. (See *In re A.H.*, *supra*, 218 Cal.App.4th at pp. 346-347 [summarizing the advisements contained in Judicial Council form JV-820].) Moreover, the social worker, and not the court, is required to give a parent notice of the date and time of the permanency hearing. (§ 294, subd. (e)(1).) Including with the notice of writ rights a copy of the minute order setting a permanency hearing is certainly a good idea, but rule 5.590(b) does not require it.

The content of the juvenile court's advisement may have satisfied rule 5.590(b), but there is no dispute the juvenile court clerk did not serve mother with notice of her writ review rights within one day of the juvenile court setting a permanency hearing, as

26

expressly mandated by rule 5.590(b)(2). A parent who is absent from the setting hearing has only 12 days after the date the notice is mailed to file her notice of intent to file a writ petition (rule 8.450(e)(4)(B)), so strict compliance with the time for giving notice is crucial to implementing the Legislature's stated intent that reasonable efforts be made to complete appellate review within the applicable time periods for conducting the permanency hearing (§ 366.26, subd. (*l*)(4)(A)). The juvenile court's five-day delay in giving mother notice thwarted that legislative intent.

More importantly, the juvenile court clerk did not mail the notice to an address where mother would likely receive it. As noted, *ante*, the juvenile court clerk mailed the notice on November 17, 2014, to an address on 6th Street in San Bernardino. This address first appears in the record in the social worker's April 15, 2014 report filed for the jurisdictional/dispositional hearing. But as early as March 25, 2014, the juvenile court was aware that mother had no address where she could be reached. Moreover, in a May 12, 2014 declaration of due diligence regarding the father's whereabouts, the social worker informed the juvenile court that the father did not live at the 6th Street address and that the current residents—who were clearly unrelated to the father and mother—had lived there for three years. In a November 12, 2014 status review report, the social worker informed the juvenile court that mother's address was "unknown" and reported mother told the social worker she was homeless. And at the six-month review hearing, mother's attorney reiterated that mother's whereabouts and current address were unknown, and informed the court that mother calls the paternal grandmother but does not leave a number where she can be reached.

27

Although the 6th Street address was literally the "last known address" on file for mother, we conclude service of notice to that address did not comply with rule 5.590(b)(2). "At the first appearance by a parent or guardian in proceedings under section 300 et seq., the court must order each parent or guardian to provide a mailing address. [¶] (1) The court must advise that the mailing address provided will be used by the court, the clerk, and the social services agency for the purposes of notice of hearings and the mailing of all documents related to the proceedings. [¶] (2) The court must advise that until and unless the parent or guardian, or the attorney of record for the parent or guardian, submits written notification of a change of mailing address, the address provided will be used, and notice requirements will be satisfied by appropriate service at that address." (Rule 5.534(m); see § 316.1, subd. (a).)

When the juvenile court strictly complies with section 316.1, subdivision (a), and rule 5.534(m), but the parent fails to inform the court of his or her new mailing address, the parent's failure to receive advisement of writ review rights mailed pursuant to rule 5.590(b)(2) does not constitute good cause to excuse the parent's failure to file a petition for extraordinary writ. (*In re A.H.*, *supra*, 218 Cal.App.4th at pp. 348-351.) At the detention hearing, the juvenile court directed mother to complete Judicial Council form JV-140 ("Notification of Mailing Address"). But there is no indication the juvenile court informed mother of the importance of updating her mailing address, and there is no

indication in the record the court inquired into mother's address when she failed to submit the form.[8]

Even if we were to conclude the juvenile court complied with section 316.1, subdivision (a), and rule 5.534(m), and even if mother failed to keep the court apprised of her current mailing address, we would still conclude the juvenile court did not comply with rule 5.590(b)(2). The juvenile court knew for almost seven months that neither mother nor the father lived at the 6th Street address, yet the court clerk mailed the advisement of writ review rights to that address. That mother was apparently homeless at the time of the setting hearing did not excuse the juvenile court in mailing notice of writ review rights to an address it knew was no longer good.

The decision in *In re Rashad B.*, *supra*, 76 Cal.App.4th 442 is instructive. There, the juvenile court did not mail notice of writ review rights to a mother who was absent from a setting hearing. On appeal, the county social services agency argued the failure to

---

[8] In its report filed for the jurisdictional/dispositional hearing, CFS recommended the juvenile court find a "JV-140 dated March 25, 2014 is on file." The juvenile court adopted that finding, and the May 12, 2014, minute order from the jurisdictional/ dispositional hearing states, "The court finds that mother has/have a current JV-140 on file with the court. Any change in address shall require the filing of a new JV-140." This finding is contradicted by statements from mother's counsel and guardian ad litem during the detention hearing that mother had difficulty completing a notification of address form because at the time she was in a residential drug treatment program and had no other mailing address. If mother had actually filed with the juvenile court a form JV-140 dated March 25, 2014, that form—like mother's form ICWA-020 bearing the same date— would have been included in the record on appeal. (Rule 8.407(a)(4) [clerk's transcript on appeal must include "[a]ny report or other document submitted to the court"].)

On October 14, 2015, a juvenile court clerk filed an affidavit with this court indicating the juvenile court case file does not include a form JV-140 from mother.

29

mail notice was harmless because the mother was homeless and had no address. (*Id.* at pp. 448-449.) After finding the juvenile court failed to comply with section 316.1 and former rule 1412(*l*) (current rule 5.534(m)), the appellate court held that the court's error was not harmless simply because the mother was homeless. (*Rashad B.*, at pp. 449-450.) "A permanent mailing address, designated for purposes of receiving notices, need not be the address at which a parent is actually residing. Many homeless people are capable of designating a permanent mailing address at which they can receive mail." (*Id.* at p. 450.) The court noted the children's maternal grandmother, in whose custody one of the children was placed at the detention hearing (*id.* at p. 445), "was a logical candidate for designation of a permanent mailing address by appellant." (*Id.* at p. 450.)

In this case, the most logical place to mail the advisement of mother's writ review rights would have been to the parental grandmother's house, where the children had been placed since the jurisdictional/dispositional hearing. Mother's attorney told the juvenile court mother had been in telephone contact with the paternal grandmother. Had the juvenile court mailed the notice to mother at the paternal grandmother's home, there was at least a reasonable chance mother would either actually receive the notice or at least would have been told such notice was mailed to her.

In its brief, CFS argues we should find mother is barred from challenging the order terminating reunification services because, even if the juvenile court did not provide adequate notice under rule 5.590(b)(2), the decision not to file a writ petition was vested in the sound authority and discretion of mother's guardian ad litem. "The effect of the guardian ad litem's appointment is to transfer direction and control of the litigation

30

from the parent to the guardian ad litem, who may waive the parent's right to a contested hearing. [Citations.]" (*In re James F.* (2008) 42 Cal.4th 901, 910.) "[A] guardian ad litem's role is more than an attorney's but less than a party's. The guardian may make tactical and even fundamental decisions affecting the litigation but always with the interest of the guardian's charge in mind. Specifically, the guardian may not compromise fundamental rights, including the right to trial, without some countervailing and significant benefit." (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1454.) The cases cited by CFS do not support the proposition that a guardian ad litem appointed for a parent in a juvenile dependency proceeding has the authority to forego filing a petition for extraordinary writ—with the consequence of waiving the parent's right to challenge orders made at the setting hearing—without first consulting with the parent and the parent's attorney. The record does not reflect such a consultation.

Finally, CFS argues mother was not prejudiced by the guardian ad litem's decision not to file a petition for extraordinary writ and, by extension, was not prejudiced by not receiving proper notice under rule 5.590(b), because the juvenile court's order terminating reunification services was not an abuse of discretion, and a writ petition would have been denied anyway.

In *In re Cathina W.*, *supra*, 68 Cal.App.4th 716, the social services agency argued the mother could not challenge the setting order on appeal from the termination of parental rights because substantial evidence supported the setting order. (*Id*. at p. 724.) The appellate court rejected the notion that a parent must show prejudice from the juvenile court's failure to correctly and timely advise the parent of their rights before he

31

or she may challenge the setting order by petition for extraordinary writ. "We will not impose such a condition upon the mother's right to appellate review of the merits of the setting order. Under respondent's argument, as we understand it, we cannot evaluate the merits of the setting order unless we find that the order was the result of prejudicial error by the juvenile court and, consequently, that a writ reversing the order would have issued had the mother filed a timely and proper . . . notice and petition. However, a determination that the setting order was infected with prejudicial error obviously requires an evaluation of the merits of the order. We therefore do not see any purpose to be served by adopting the rule advocated by respondent." (*Ibid*.) So too here. We decline to impose a prejudice requirement when the parent's failure to challenge a setting order by writ petition is the result of the juvenile court's failure to comply with rule 5.590(b).

On these facts, we conclude the juvenile court did not provide mother with timely and adequate notice of her right to seek appellate review of the setting order, as mandated by rule 5.590(b). Therefore, notwithstanding mother's failure to file a petition for extraordinary writ challenging orders made at the setting hearing, we find good cause to consider her claim of error in this appeal.

C. *The Juvenile Court Did Not Abuse Its Discretion by Terminating Reunification Services*

Mother contends the juvenile court abused its discretion by terminating reunification services after only six months. We disagree.

When the child is three years old or older, the parent must be provided with reunification services beginning after the dispositional hearing and lasting 12 months

32

after the child is placed in foster care.  (§ 361.5, subd. (a)(1)(A); rule 5.695(h)(1).)  At the six-month review hearing, the juvenile court must return the child to the parent unless it finds by a preponderance of the evidence that returning the child would be detrimental to the child.  (§ 366.21, subd. (e), 1st par.; rule 5.710(b)(1).)  The juvenile court may order "additional services reasonably believed to facilitate the return of the child to the custody of his or her parent . . . ."  (§ 366.21, subd. (e), 2d par.; see rule 5.710(b)(4).)

However, if the juvenile court finds by clear and convincing evidence the parent failed to visit with and contact the child during the first six months of reunification services, the court may terminate reunification services and set a permanency hearing under section 366.26.  (§ 366.21, subd. (e), 5th par.; rule 5.710(c)(1)(A); *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1017; see also § 366.21, subd. (h) ["In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian"]; rule 5.708(n)(1) [same].)

"The statutes governing reunification services and review hearings must be considered in light of the juvenile dependency system as a whole.  [Citation.]  The overall objective of that system is the protection of abused or neglected children and the provision of permanent, stable homes if they cannot be returned to parental custody within a reasonable time.  [Citation.]  The general purpose of dependency law is to safeguard the welfare and best interests of children.  [Citations.]"  (*In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1241.)  "Where, as the record shows in this case, the likelihood of reunification is extremely low [citation], a continuation of the reunification

33

period would waste scarce resources and delay permanency for dependent minors. [This conclusion] is consistent with the legislative intent behind the statutory scheme—'to balance efforts to reunify the family with the child's need for stability.' [Citation.]" (*Id.* at p. 1242.) "The importance of reunification services in the dependency system cannot be gainsaid. The law favors reunification whenever possible. [Citation.] To achieve that goal, ordinarily a parent must be granted reasonable reunification services. [Citation.] But reunification services constitute a benefit; there is no constitutional '"entitlement"' to those services. [Citation.]" (*Ibid.*)

There is no dispute mother did not visit with the children until almost four months after the juvenile court terminated reunification services and set the permanency hearing. Although the record indicates mother contacted the paternal grandmother sporadically during the first six months of reunification services, there is no indication in the record mother contacted the children. In her brief, mother contends the paternal grandmother did not report whether mother spoke to the children and the social worker did not ask if mother spoke to the children. True, the report does not indicate whether the social worker asked if mother spoke to the children. But at the six-month review hearing, mother's counsel did not object to the social worker's report being admitted into evidence or present any evidence of mother's contact with the children. Instead, counsel conceded mother's failure to visit was the basis of the recommendation for terminating reunification services. Counsel asked the court to grant services for an additional six

34

months, saying, "A lot of things can change in six months." On this record, we conclude the juvenile court did not abuse its discretion by terminating reunification services.[9]

D.      *The Juvenile Court Correctly Denied Mother's Request to Continue the Permanency Hearing*

Mother also contends the juvenile court abused its discretion by denying her request for a continuance of the permanency hearing so she could file a petition under section 388. We find no abuse of discretion.

"The juvenile court has the power to 'control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought.' (§ 350, subd. (a)(1); [citation].) Although continuances are discouraged in dependency cases [citation], the juvenile court may continue a dependency hearing upon a showing of good cause, provided the continuance is not contrary to the interest of the child. (See § 352, subd. (a) ['[N]o continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt

---

[9] Mother also contends the juvenile court erred by not considering barriers to mother's visitation and contact with the children when terminating reunification services. The juvenile court is required to consider barriers to visitation and contact resulting from a parent's incarceration or institutionalization. (§ 366.21, subd. (e), 5th par.; rule 5.710(c)(1)(A).) Although mother voluntarily entered a psychiatric facility early in the proceedings, there is no evidence in the record she was prevented from visiting or contacting the children because she was incarcerated or institutionalized during the six months of reunification services. The juvenile court's failure to consider barriers to mother's visitation and contact was harmless.

resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.']; [citation].) We review an order denying or granting a continuance for abuse of discretion. [Citations.] 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.]" (*In re Emily D.* (2015) 234 Cal.App.4th 438, 447-448.)

As noted, *ante*, mother did not make her first visit with the children until almost four months after the juvenile court terminated reunification services and set the permanency hearing. On the date of the continued permanency hearing, mother submitted documentation of her regular, but fairly recent, attendance at NA meetings. Mother's counsel requested the permanency hearing be continued once more so mother could file a petition under section 388, supported by the documentation already submitted to the court, requesting additional reunification services. The juvenile court denied the request, finding mother "had plenty of time" to file her petition after the six-month review hearing.

We agree with the juvenile court that mother had ample time to file a section 388 petition before the continued permanency hearing.[10] Moreover, granting the continuance would not have been in the children's best interest because mother could not have made a

---

[10] In addition, mother did not provide written notice of the motion for a continuance two days before the continued hearing, and the juvenile court did not find good cause to hear the motion orally. (Rule 5.550(a)(4).)

sufficient showing under section 388 for additional reunification services. "A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child. [Citation.] The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. [Citation.] Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. [Citation.]" (*In re A.A.* (2012) 203 Cal.App.4th 597, 611-612 [Fourth Dist., Div. Two].)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate. [Citation.] In other words, the problem that initially brought the child within the dependency system must be removed or ameliorated. [Citation.] The change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order. [Citation.]" (*In re A.A.*, *supra*, 203 Cal.App.4th at p. 612.)

Section 388 is "an 'escape mechanism' when parents *complete a reformation* in the short, final period after the termination of reunification services but before the actual termination of parental rights. [Citation.]" (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528, italics added.) It is not enough for a parent to show an incomplete reformation or that she is in the process of changing the circumstances which lead to the dependency. "After the termination of reunification services, the parents' interest in the care, custody

37

and companionship of the child are no longer paramount.  Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' . . . .  [Citation.]  A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child."  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

"'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests.  [Citation.]  "'[C]hildhood does not wait for the parent to become adequate.'"" [Citation.]"  (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206.)

The courts have consistently held that, when long-term drug addiction is the prime reason for a parent's unfitness and of the dependency, it is not enough for the parent to show they have started the process of getting sober or that they have been sober for a brief period.  (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [Fourth Dist., Div. Two]; *In re Mary G.*, *supra*, 151 Cal.App.4th at p. 206; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424; *In re Casey D.* (1999) 70 Cal.App.4th 38, 48; *In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9.)

Although mother's regular attendance of NA meetings and initial progress in addressing her mental health issues leading up to the permanency hearing was laudable, at best they were the beginning of mother's efforts at rehabilitation.  By the time mother made her request for a continuance, the children had been in the paternal grandmother's

38

care for many months, and they made it clear they wished their paternal grandmother to adopt them.  Continuing the permanency hearing to permit mother to file what would have been a futile section 388 petition was not in the children's best interest.  Therefore, we conclude the juvenile court correctly denied a continuance.

E.  *The Juvenile Court Failed to Consider a Legal Impediment to Adoption by the Paternal Grandmother When It Found the Children Were Likely to Be Adopted*

Mother contends there is no substantial evidence to support the juvenile court's findings the children are likely to be adopted because the court did not find the children are generally adoptable, and the court failed to consider a legal impediment to adoption by the paternal grandmother.  We agree the juvenile court failed to consider a potential legal impediment to adoption by the paternal grandmother.  We therefore reverse the order terminating parental rights and remand the matter for the juvenile court to consider potential legal impediments.

When the juvenile court sets a permanency hearing, the county social services agency must assess, inter alia, "the likelihood that the child[ren] will be adopted if parental rights are terminated."  (§ 366.21, subd. (i)(1)(G).)  The juvenile court may only terminate parental rights if it finds by clear and convincing evidence the children are likely to be adopted.  (§ 366.26, subd. (c)(1); rule 5.725(d)(2).)  "A finding of adoptability requires 'clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time.'  [Citation.]  The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child.  [Citation.]  [¶]  If the child is

39

considered generally adoptable, we do not examine the suitability of the prospective adoptive home. [Citation.] When the child is deemed adoptable based solely on a particular family's willingness to adopt the child, the trial court must determine whether there is a legal impediment to adoption. [Citation.] The juvenile court should also explore a child's feelings toward his or her parents, foster parents and prospective adoptive family. [Citations.]" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1231-1232.)

Mother is correct there is a potential legal impediment to the paternal grandmother adopting the children. "A married person, not lawfully separated from the person's spouse, may not adopt a child without the consent of the spouse, provided the spouse is capable of giving consent." (Fam. Code, § 8603, subd. (a).) Such a barrier to adoption "is relevant because the legal impediment would preclude the very basis upon which the social worker formed the opinion that the minor is likely to be adopted. [Citation.]" (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650.)

In the addendum report submitted for the permanency hearing, the social worker reported the paternal grandmother was a suitable candidate for adopting the children, but also reported the paternal grandmother was still married to her estranged husband and would need to obtain his consent before proceeding with the adoption. At the permanency hearing, the juvenile court found the children were likely to be adopted and expressly considered the children's wishes when terminating mother's parental rights. However, the court did not consider whether the paternal grandmother would be able to obtain consent for the adoption from her estranged husband.

Because the juvenile court did not consider whether the paternal grandmother's need to obtain spousal consent under Family Code section 8603 would pose an impediment to her adopting the children, and did not inquire whether the paternal grandmother would be able to obtain spousal consent in a reasonable amount of time, we conclude the court's adoptability findings are not supported by substantial evidence. The order terminating parental rights is reversed. On remand, the juvenile court shall consider potential legal impediments to adoption by the paternal grandmother.

F. *Substantial Evidence Does Not Support the Juvenile Court's Finding of Adequate ICWA Notice*

Last, mother argues, and CFS concedes, the juvenile court's finding of adequate notice pursuant to ICWA is not supported by substantial evidence. We agree.

"'Among ICWA's procedural safeguards is the duty to inquire into a dependent child's Indian heritage and to provide notice of the proceeding to any tribe or potential tribes, the parent, any Indian custodian of the child and, under some circumstances, to the Bureau of Indian Affairs.' [Citation.] To comply with these notice requirements, [CFS] was required to (1) identify any possible tribal affiliations and send notice to those tribes; and (2) submit copies of such notices, including return receipts, and any correspondence received from the tribes to the trial court. [Citation.]" (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451.) "'The [trial] court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.] We review the trial court's findings for substantial evidence. [Citations.]'" (*Ibid.*)

41

"ICWA notice requirements are strictly construed. [Citation.] The notice sent to the BIA and/or Indian tribes must contain enough information to be meaningful. [Citation.] The notice must include: if known, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition. [Citation.] To enable the juvenile court to review whether sufficient information was supplied, [CFS] must file with the court the ICWA notice, return receipts and responses received from the BIA and tribes. [Citation.]" (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703.)

Mother reported possible Indian ancestry through her father. The ICWA notice included the children's maternal grandfather's name and current address, but did not include the date and place of his birth. CFS concedes the omission did not comply with federal and state law (25 C.F.R. § 23.11(a), (d)(1) (2015); Welf. & Inst. Code, § 224.2, subd. (a)(5)(C); *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 575, fn. 3 [Fourth Dist., Div. Two]), and agrees with mother we should remand the matter for proper notice. In addition, the notice included mother's date of birth but did not include her place of birth.

On remand, CFS shall exercise due diligence to obtain the omitted information and shall resubmit notice to the identified Indian tribes and the BIA. The juvenile court shall then determine anew whether the new ICWA notice contains meaningful information from which the identified Indian tribes may determine whether the children are Indian children.

## IV.

## DISPOSITION

The orders terminating mother's parental rights are reversed. On remand, the juvenile court shall order CFS to comply with the notice provisions of ICWA and to file all required documentation with the juvenile court for its inspection. If, after proper notice, a tribe claims the children are Indian children, the juvenile court shall proceed in conformity with all provisions of ICWA. And, the children, mother, and any Indian tribe claiming the children are Indian children may petition the juvenile court to invalidate any orders that may have violated ICWA.

If, on the other hand, no tribe makes such a claim, prior defective notice becomes harmless error. The juvenile court shall then conduct a new permanency hearing and consider potential legal impediments to adoption by the paternal grandmother. If the juvenile court concludes no legal impediments exist, the court shall enter new orders finding the children are likely to be adopted and terminating parental rights.

In all other respects, the underlying orders are affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

McKINSTER_____
J.

We concur:

HOLLENHORST_____
Acting P. J.

KING_____
J.

43