Filed 5/27/21  In re N.P. CA3
Opinion following rehearing

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re N.P., a Person Coming Under the Juvenile Court Law. | C092148 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJVDP20190000013) |
| Plaintiff and Respondent, | OPINION ON REHEARING |
| v. | |
| C.P., | |
| Defendant and Appellant. | |

C.P., the biological father of the minor (father), appeals from the juvenile court's order terminating his parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  He challenges the court's finding that he was the minor's

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

1

biological father and not the minor's presumed father, and contends his attorneys rendered prejudicial ineffective assistance of counsel. Concluding those claims are not cognizable in this appeal, we will affirm the juvenile court's orders.

BACKGROUND

The newborn minor N.P. came to the attention of the San Joaquin County Human Services Agency (Agency) in December 2018, after mother and the minor tested positive for amphetamines. Mother admitted using methamphetamine two months prior to the minor's birth and to using four or five times during pregnancy, and she further admitted having obtained only limited prenatal care. Father, who mother identified as the minor's biological father, stated his name appeared on the minor's birth certificate, which he signed.[2] Father and mother (parents) were not married. The parents were unable to verify they had supplies for the newborn minor or a place for themselves and the minor to stay. The parents signed a safety plan stating that mother would go to Central Intake to participate in an assessment and do whatever was recommended. However, she failed to do so.

The parents arranged for the maternal grandmother to care for the minor. The maternal grandmother informed the social worker that the parents were homeless and mother was using drugs. The Agency provided the maternal grandmother with resource family approval (RFA) information.

On January 9, 2019, the Agency filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g), alleging failure to protect the minor and failure to provide support for the minor due to the parents' transient lifestyle. The petition alleged that mother identified father as the minor's father and stated he was

---

[2]   Father had two other children, both of whom were under the legal guardianship of the paternal grandmother. Mother had two other children, each of whom was in the care of a legal guardian.

2

present at the minor's birth and his name appeared on the birth certificate. The petition further alleged father reported completing a Prop 36 drug treatment program through probation approximately three to four years prior to address his use of methamphetamine and marijuana. Father was aware of mother's drug use and its detrimental effects on the minor but failed to address the problem. It was also alleged that father had a pattern of behavior and criminal convictions beginning in 2006 and continuing through 2018, placing the minor at increased risk of abuse and neglect.

At the January 10, 2019 detention hearing, the court asked father if he was present at the time of the minor's birth, if he signed the birth certificate, and if he signed the voluntary declaration of paternity or any other documents. Father responded affirmatively to each of those questions. When father stated he did not bring the documents with him to court, the court stated, "We need to see those so we can determine your status." The Agency stated father provided the same information to the social worker, but the Agency had not yet seen the documents. The court told father, "At this point you will remain as alleged father until we see the documentation," and, "If you have that, please bring it in or show social worker so we can elevate your status to bio or presumed father. But I need to see something on that." The court also indicated it would hold off on appointing counsel for father "until we get documentation." The court later told father, "[W]e will have to wait on you until we get more information, the documentation I mentioned. As soon as we get that, we can re-visit your status so that you can fully participate." The court found father to be an alleged father "until we receive the documentation" and ordered the minor detained with supervised visits for mother. At the Agency's request, the court authorized supervised visits for father at the Agency's discretion "if he provides copy of declaration of paternity."

The parents were not present for the January 24, 2019 jurisdiction hearing and could not be located or served despite diligent efforts. The court was informed that father had not yet provided a signed voluntary declaration of paternity or been appointed

3

counsel. The court proceeded in their absence, sustaining the allegations in the petition, and adjudging the minor a dependent of the juvenile court.

The parents participated in a January 29, 2019 child family team (CFT) meeting by telephone. It was determined that both parents would benefit from participating in services related to substance abuse treatment, parenting classes, and individual counseling. The parents were informed that the Agency would provide them with bus passes to assist them in getting to those services and were asked to make an effort to connect with the service providers.

The February 25, 2019 disposition report stated the Agency received the declaration of paternity reflecting father as father of the minor. The Agency requested that the court elevate father's status to biological father. The social worker had reportedly been unable to meet with the parents due to the parents' failure and refusal to appear at scheduled appointments, answer telephone calls, or return voicemail messages since the CFT meeting on January 29, 2019, or to otherwise remain in contact with the social worker. Since providing the declaration of paternity on February 1, 2019, father attended only two of six scheduled visits with the minor. On January 30, 2019, the minor was assessed and determined to be adoptable.

The report stated section 361.5, subdivision (a) applied to bypass reunification services to father. The Agency determined it would not be beneficial to the minor to provide father with services due to father's failure to remain in contact with the Agency or regularly attend visitation with the minor. Father had not been responsive to the Agency's requests for an interview or to discuss the case to complete family backgrounds. The report also noted father's extensive criminal history involving frequent incarcerations, noting it was not conducive to providing a safe and stable home environment for the minor. Based on these circumstances, the Agency recommended the court bypass father for services.

4

At the February 28, 2019 disposition hearing, the court declared father to be the minor's biological father and appointed counsel for him. The court ordered both parents to participate in drug court. Mother submitted to disposition. The court continued the matter as to father and ordered visitation to continue at the current schedule but noted visits would be reduced if missed.

At the March 14, 2019 continued disposition hearing, the court reduced the parents' visits to once per week and gave the Agency discretion to increase visits.

At the contested disposition hearing on April 18, 2019, the court heard testimony from father, who stated he signed the declaration of paternity, held himself out as the minor's father, and stayed with the minor for several days while mother remained in the hospital after birth. Father testified he was not allowed to have visitation with the minor in the beginning of the dependency case unless he brought the declaration of paternity to court. However, once the maternal grandmother provided the document, father was granted visitation. He received referrals for parenting classes and individual counseling. He completed orientation for the parenting class and planned to attend the first of 12 classes that night. He met twice with his counselor. When asked whether there were any other services the Agency wanted him to participate in, father stated he was to "be there to support [mother] through her rehab or whatever they were doing with her, the New Directions," but mother did not go to rehab. Father testified he already completed "my Prop 36, chemical dependency counseling centers, all the obstacles that I've done throughout my drug history." Father testified he was willing to complete his parenting classes and counseling and participate in visits and would be working on getting a truck driving job. He stated he was committed to participating in services even if mother did not, and he was willing to separate from mother if necessary. Father also testified he had temporary housing.

Father admitted that he never told his social worker that the maternal grandmother had the signed declaration of paternity. As a consequence, he did not have a formal

5

visitation schedule for the first month and then, once the declaration was provided to the Agency, visits were scheduled. He admitted he was provided six informal visits in January but attended only two. He denied reports that he missed a visit on March 16, 2019, and he and mother showed up over 20 minutes late on other visits.

Father testified he completed the Prop 36 drug program approximately eight years ago. He admitted he had a conviction for possession of a controlled substance within the last two and a half years and was still struggling with substance abuse. He stated he completed outpatient drug treatment in late 2017 or early 2018. Father claimed he was unaware mother was using drugs during her pregnancy even though he was with her "[t]he whole time." He testified he used methamphetamine two or three months prior to the hearing and used marijuana the day prior. He denied the court or the Agency ever asked him to be assessed for substance abuse treatment. When asked what he was doing in terms of his drug treatment, he stated, "Staying away. Staying away from the people, the crowd, the acquaintances that are down there in that tent city." He stated he was not going to NA meetings because he was not instructed to do so. When asked if he would go into residential drug treatment if the court ordered him to do so, father answered, "No. I will not go," adding he would not go if it meant he would have to give up trucking school. He testified he would choose trucking school over getting the minor back because "my daughter will always be there, I guess, but my career won't."

Social worker Claudette Butman testified the Agency informed father "many times" that it would provide him with bus passes so he could avail himself of services. Butman informed father about the bus passes at the CFT meeting, at court appearances, and in a letter sent to him on March 14, 2019, but he never came to pick up the passes. The March 14, 2019 letter set out the referrals that were being made for services for him, including parenting classes and individual counseling. Butman spoke with father on the telephone on March 26, 2019, at which time father confirmed he received the letter but stated he had not yet done anything regarding those services because he was waiting for

6

mother to engage in her services. Butman also encouraged father to engage in services at the January 2019 CFT meeting and every time he attended a court hearing. She confirmed that, during the CFT meeting, father was informed he would need to participate in a substance abuse treatment program, to which he was opposed.

Butman testified there was an approximate one-month delay in establishing paternity. However, contrary to father's statement that the maternal grandmother was in possession of the paternity declaration, Butman testified the maternal grandmother stated the declaration was in the parents' possession and offered to assist them in getting it to the Agency. At the CFT meeting in late January 2019, the parents were reminded that father could not participate in visitation until he provided a copy of the declaration. Butman testified the maternal grandmother obtained a copy of the declaration from the parents, scanned it, and provided it to the Agency via e-mail. Thereafter, father was not referred to services until March 2019 due to the time necessary to request financial agreements and make referrals.

The court noted father had been slow to make his appointments and engage in services. He had only a handful of visits and was not bonding over the first four months of the minor's life. The court also noted father only seemed willing to engage as long as the services did not interfere with "other things that are on your plate," and did not find father was fully committed to reunification or that there was a sufficient likelihood that father would provide stability for the minor on a regular basis. The court found a substantial danger to the minor if returned to father and no reasonable means by which to protect the minor without removal. The court further found that it would not benefit the minor to provide reunification services to father and bypassed services pursuant to section 361.5, subdivision (a). The court maintained the current visitation schedule and encouraged the parents to attend every visit.

The August 2019 status review report stated the parents continued to be transient, failed to return the social worker's voicemails to contact her to meet and review their

7

case plan, and failed to attend scheduled visits with the minor. An absent parent locator revealed an address for the parents in Lodi to which the Agency sent correspondence. But for one attempt to contact the social worker, father otherwise failed to return messages or attend any of his scheduled office visits. It was unknown whether father was employed, and it was noted that he might be incarcerated. Both parents were inconsistent with visits and on July 20, 2019, due to the parents' failure to show up on three consecutive occasions, visits were canceled. It was noted that father had been in and out of jail making his visits inconsistent. When the parents did visit, the maternal grandmother[3] supervised and noted the parents' lack of engagement and bonding with the minor. She also noted the parents were often late and would leave early. Mother fell asleep numerous times during visits and the maternal grandmother needed to constantly prompt both parents on what they should do with the minor such as feeding her and changing her diaper. The maternal grandmother also noted that father became easily frustrated with the infant minor and, shortly after he was bypassed for services, stopped visiting the minor altogether. The social worker made attempts to re-engage the parents in order to restart case plan services and visits, but the parents failed to respond to telephone calls or make any effort to contact the social worker. The Agency noted that mother was again pregnant and father was the father. The Agency requested that the court terminate mother's reunification services and change the permanent plan of reunification to adoption by the maternal grandmother.

Neither parent appeared for the August 27, 2019 review hearing. The court terminated mother's reunification services and set the matter for a section 366.26 hearing.

The December 2019 section 366.26 report stated the maternal grandmother notified the social worker that the parents were attending separate drug and alcohol

---

[3] The maternal grandmother's home was approved as an RFA home on May 14, 2019.

8

rehabilitation programs, with mother in San Jose and father in Monterey. The maternal grandmother had not heard from father since November 4, 2019. Mother called the maternal grandmother on November 18, 2019, and confirmed having recently given birth to her child, L.P. Mother called back on November 27, 2019, and stated she was able to keep her newborn as long as she remained in the rehabilitation program. The maternal grandmother had not heard from the mother since then. On December 11, 2019, both parents appeared in court and provided updated addresses. According to the maternal grandmother, the last visit father had with the minor was on June 22, 2019. The minor was assessed as adoptable on July 25, 2019. The maternal grandmother was an RFA-approved home and was committed to providing permanency for the minor through adoption. All of the minor's needs were being met by the maternal grandmother and she was thriving in the maternal grandmother's care. The Agency recommended termination of parental rights.

The March 2020 status review report stated that father told the social worker on January 22, 2020, that he left the drug and alcohol rehabilitation program in Monterey because "I have remained clean" and "it was a non-vocational training program and that they would not assist him with finding a job." He admitted he left the program "to move forward with his career," stating he was part of the "Vocational Drug Court Training" and was seeking employment. He also admitted he was residing with his parents where he planned to remain while seeking employment. Father told the social worker his parents would not allow mother to stay with them because they did not "see eye to eye." He confirmed he was taking care of the newborn, L.P., while mother resided at the Salvation Army Shelter in Lodi, but mother was welcome to see the baby as often as possible. The report noted that mother released herself prior to completing her drug and alcohol rehabilitation program because the program "was no longer working for her" and she wanted to be closer to her children.

9

The report noted there had been no effort on either parent's part to visit the minor since July 6, 2019. On January 25, 2020, the maternal grandmother coordinated a visit at the maternal aunt's house. During the visit, mother had very little interaction with the minor and father spent most of the visit playing games on his phone and interacting very little with the minor. After the visit was complete, the parents made no effort to initiate scheduling another visit. The maternal grandmother coordinated a second visit on February 8, 2020, at a Chuck E. Cheese restaurant. Again, the parents had very little interaction with the minor during the visit, and after the visit no further visitation was requested. The Agency recommended termination of parental rights.

Neither parent was present for the March 3, 2020 contested section 366.26 hearing. Father's counsel requested a continuance. Noting the parents set the matter as contested and notice was proper, the court denied the request and proceeded with the hearing. The court found by clear and convincing evidence that the minor was likely to be adopted and termination of parental rights was in the minor's best interest. The court further found that none of the exceptions to adoption existed and terminated parental rights, ordering adoption as the permanent plan.

## DISCUSSION

Father contends the juvenile court erred when it treated him as a biological father and did not find he rose to the status of a presumed father. He further claims his various attorneys rendered prejudicial ineffective assistance of counsel due to their failure to advocate for and protect his rights as a presumed father.

The juvenile court determined father was the minor's biological father at the disposition hearing on February 28, 2019. The court denied reunification services to father on that ground and after determining it would not be in the minor's best interests at the contested disposition hearing on April 18, 2019.

In a juvenile dependency proceeding, the dispositional order is the judgment for purposes of appeal. (§ 395; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149-1150.)

10

"A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).) " ' "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." [Citation.]' [Citations.]" (*In re S.B.* (2009) 46 Cal.4th 529, 532.) Here, father could have challenged the decisions regarding lack of presumed father status and the denials of reunification services in an appeal from the disposition order within 60 days of the April 18, 2019 hearing, but he did not. (§ 395; *In re Meranda P.,* at p. 1150.)

Father should have filed a notice of appeal of the court's dispositional orders within 60 days of the April 18, 2019 disposition hearing. (Cal. Rules of Court, rule 8.406(a).)[4] He did not. Instead, he appealed from the court's March 3, 2020 order terminating his parental rights and freeing the minor for adoption. We requested supplemental briefing to determine whether father may challenge, in his appeal taken from the March 3, 2020 order, the propriety of the juvenile court's February 28, 2019 and/or April 18, 2019 dispositional orders.

In supplemental briefing, father concedes his appeal is untimely but urges us to excuse his failure to timely appeal and consider the merits of his claims because (1) the juvenile court failed to orally advise him at either hearing of his right to appeal as required by Rule 5.590(a), and/or (2) due process requires us to consider the merits of his claim despite the forfeiture rule because the error fundamentally undermined the statutory scheme and prevented father from meaningfully engaging in the proceedings and availing himself of the protections of the dependency scheme. Neither claim has merit.

---

**4**      Further rule references are to the California Rules of Court.

11

"One of the most fundamental rules of appellate review is that the time for filing a notice of appeal is jurisdictional. '[O]nce the deadline expires, the appellate court has no power to entertain the appeal.' [Citation.] 'The first appealable order in a dependency case is the dispositional order . . . . [A] challenge to the jurisdictional findings must be raised in an appeal from the dispositional order.' [Citation.] . . . . It is only in very rare and ' "special circumstances constituting an excuse for failure to [timely appeal]" ' that an appellate court may grant review of an appealable order by way of extraordinary writ after the deadline to appeal has passed." (*In re A.O.* (2015) 242 Cal.App.4th 145, 148.)

Father claims he was entitled to an advisement of his right to appeal pursuant to Rule 5.590(a), which provides in relevant part as follows: "If at a contested hearing on an issue of fact or law the court finds that the child is described by Welfare and Institutions Code section 300, 601, or 602 or sustains a supplemental or subsequent petition, the court after making its disposition order other than orders covered in (b) must advise, orally or in writing, the child, if of sufficient age, and the parent or guardian of: (1) The right of the child, parent, and guardian to appeal from the court order if there is a right to appeal. . . ." (Rule 5.590(a)(1).)

The advisement mandate in Rule 5.590(a) "applies any time a court finds that dependency jurisdiction under section 300, 601, or 602 is proper." (*In re A.O., supra,* 242 Cal.App.4th at p. 148.) Rule 5.590(a) did not entitle father to an appellate advisement. By its terms, Rule 5.590(a) only applies if the jurisdiction hearing is contested. (See *In re A.O.,* at p. 149 [the mother submitted on the agency's recommendations regarding reunification services but made "vigorous efforts to contest jurisdiction and removal"].) Here, father did not contest the court's jurisdictional findings. Indeed, father was not present at the jurisdictional hearing and therefore was not entitled to an appeal advisement. (See *In re A.A.* (2016) 243 Cal.App.4th 1220, 1236 [no advisement required where the mother's counsel objected to allegations in the petition, but mother not present at the jurisdiction hearing as required by Rule 5.590(a)].)

12

Under these circumstances, the juvenile court was not required to advise father of his right to appeal the dispositional orders, which are now final and cannot be challenged by way of an appeal from the March 3, 2020 section 366.26 orders.

Father's due process claim is similarly unavailing. He argues an exception to the forfeiture rule because the court's failure to find him to be a presumed father prevented him from meaningfully engaging in the proceedings and availing himself of the protections of the dependency scheme. (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208.) The record belies father's claim.

While the court determined father was a mere biological father at the January 10, 2019 detention hearing, for all practical purposes the court and the Agency treated him as if he were a presumed father. Nonetheless, he failed to fully engage in services or visit with the minor. For example, at the CFT meeting on January 29, 2019, it was determined that *both* parents would benefit from participating in services related to substance abuse treatment, parenting classes, and individual counseling. However, he (and mother) reportedly failed and refused to appear at scheduled appointments, answer telephone calls, return voicemail messages, or otherwise remain in contact with the social worker. Father was similarly unresponsive to the Agency's requests for an interview or to provide a complete family background. He continued to abuse drugs and, in April 2019, testified he was not going to NA meetings, he would not go to residential drug treatment if ordered to do so because his career took precedence, and he had not engaged in parenting classes or individual counseling because he was waiting for mother to engage in her services. When he did finally engage in a drug and alcohol rehabilitation program, he left the program prematurely "to move forward with his career."

Father was authorized to have supervised visits with the minor on February 1, 2019, but only attended a fraction of the scheduled visits and became easily frustrated with the minor when he did. Once the court bypassed him for services, he stopped visiting entirely despite being encouraged by the court to attend every visit.

13

Notwithstanding the maternal grandmother's efforts to re-engage the parents in visits with the minor, father had very little interaction with the minor and made no effort to initiate scheduling additional visits.

In addition to being provided with services, visitation, and drug court, father was appointed counsel on February 28, 2019, just a little over one month after the filing of the dependency petition. Thereafter, he participated in the dependency proceedings if and when he chose to do so. In particular, he testified on April 18, 2019, about his status as the minor's father, his receipt of referrals for parenting classes and individual counseling, his visitation, his temporary housing, and his plan to obtain employment.

In short, father was offered services (whether formal or informal) and visitation, was appointed counsel one month into the proceedings, and was afforded due process. Given that, and his failure and refusal to fully engage and participate in nearly every aspect of the proceedings, father cannot demonstrate prejudice and any error in not finding father to be the minor's presumed father was harmless.

With regard to father's claim of ineffective assistance of counsel, it is too late in an appeal from the March 3, 2020 order terminating his parental rights to complain about the quality of representation rendered during disposition hearings long past. (*In re Meranda P., supra,* 56 Cal.App.4th at p. 1160; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667 [untimeliness may in many cases preclude review of claims of ineffective assistance of counsel].) Even if father had timely filed his appeal, the fact that he was afforded services, visitation, legal counsel, and due process but failed to fully engage or make whole-hearted efforts to reunify with the minor reveals he cannot establish prejudice, as would be required to prevail on a claim of ineffective assistance of counsel. (See *Strickland v. Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674]; *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711; *In re Meranda P., supra,* 56 Cal.App.4th at p. 1152 ["[I]ncompetent counsel does not mean the parent was in fact harmed as a consequence."].)

We conclude none of the reasons argued by father excuse his failure to timely appeal or application of the so-called waiver rule.  As such, none of father's claims are cognizable in this appeal.

DISPOSITION

The juvenile court's orders are affirmed.


_____/s/_____
BLEASE, Acting P. J.


We concur:


_____/s/_____
HULL, J.


_____/s/_____
MURRAY, J.


15