Filed 6/12/23 Certified for Publication 6/16/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Damari Y., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.Y.,<br><br>    Defendant and Appellant. | A166037<br><br>(Alameda County<br>Super. Ct. No. JD-033282-01) |

      D.Y. (Father) has been incarcerated since before his son Damari Y. (Minor) was born in February 2021. A few days after Minor's birth, the Alameda County Social Services Agency (Agency) filed a petition on his behalf under Welfare and Institutions Code section 300.[1] After the juvenile court terminated Father's reunification services and set a section 366.26 hearing, Father did not file a writ petition. But on the eve of the section 366.26 hearing, he filed a petition under section 388 to reinstate reunification

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated. References to rules are to the California Rules of Court.

1

services, stating that although he had sought to play an active role in the matter, the Agency had not provided services despite the court's orders. The court denied Father's request for an evidentiary hearing on his petition, denied the petition, and terminated Father's parental rights. On appeal, Father argues that the juvenile court erred in denying his request for an evidentiary hearing on his petition.

Over the course of the proceedings below, all of which occurred during the COVID-19 pandemic, Father was incarcerated in three different facilities. He was represented by at least five different attorneys, three of whom informed the court of difficulties they encountered in contacting him in prison. And the Agency reported that prison officials did not respond to emails and voicemails about services for Father or arranging Father's participation in case planning. In these circumstances, it was error to deny Father's request for an evidentiary hearing on his section 388 petition, and we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Original and Supplemental Petitions*

In February 2021, Minor's mother arrived at a hospital in labor and tested positive for illegal drugs. Minor tested positive for amphetamines at his birth. A few days after Minor was born, the Agency removed him from his mother's care and filed a petition under section 300, alleging that mother was unable to care for Minor (§ 300, subd. (b)), and that Minor had no provision for support by Father (identified as the alleged father) as the mother reported he was incarcerated.[2] (*Id.*, subd. (g).) The juvenile court ordered Minor detained and appointed attorney Pretzer to represent Father.

_____

[2] The Agency later confirmed that Father was in custody at Santa Rita Jail, having been arrested in September 2020 on charges related to the

2

Father was not present at the jurisdiction/disposition hearing, which was held by videoconference due to COVID-19. Attorney Pretzer informed the court that Father requested a DNA test and would seek to be raised to the status of biological father. The court ordered DNA testing for Father, found the allegations of the petition true, and set the matter for a six-month review hearing in September 2021.

In June 2021, the Agency removed Minor from a relative's home to a foster home, and filed a supplemental petition for more restrictive placement under section 387, based on allegations that Minor was not being safely cared for by the relative. In its detention report, the Agency reported that Father remained in custody at Santa Rita Jail, that he had not maintained contact with the Agency, and that DNA testing was being scheduled for him.

Father was present at the July 2021 videoconference jurisdiction/disposition hearing on the supplemental petition. The court ordered DNA testing for Father "forthwith" and continued the hearing to August 10, 2021. In advance of the continued hearing, the Agency reported that Father, who was still at Santa Rita Jail, and who had requested reunification services, had completed a DNA test, and that results were pending.

By the time of the continued hearing, Father was represented by attorney Trask. Father was present at the hearing, which was conducted by videoconference, and was elevated to biological father status, and the Agency was ordered to provide Father with reunification services. A review hearing was scheduled for September 21, 2021.

---

receipt or possession of firearms by a person subject to a domestic violence protection order. Minor's mother is not a party to this appeal, and we discuss facts pertaining to her only to provide background.

B.    *Six Month Review*

In a status review report filed on September 9, 2021, the Agency recommended that reunification services be terminated, and that a section 366.26 hearing be scheduled with the proposed permanent plan of adoption by the current caregiver.  The Agency reported that Father's case plan required him to show his ability and willingness to have custody of Minor, to make himself available to the Agency for assessment of needs, and to "work on ways to parent [Minor] and establish a relationship that includes providing regular physical, emotional, financial, educational, and medical support."  The Agency further reported that Father, who was still incarcerated at Santa Rita Jail, had not maintained contact with the Agency, and that in the time since reunification services had been ordered for Father, the social worker mailed family reunification paperwork and parenting information to Father at the jail.

Father was not present at the September 21, 2021 hearing, which, like previous hearings, was conducted by videoconference due to COVID-19.  In view of the Agency's request to terminate reunification services, attorney Trask requested a continuance so that she would have the opportunity to discuss the matter with her client.  She reported that Father had recently been moved to the Mendota Prison in Fresno, and that she had "significant difficulties contacting" him.  The court continued the hearing to October 8, 2021.

The October 8, 2021 hearing was conducted by videoconference. Father, who had by this time been transferred to a federal prison in Victorville, appeared by telephone, and was represented by attorney Bradley,

4

who stated she was replacing Trask as Father's attorney of record.[3] The Agency informed the court that it was changing its recommendation to request continued services, explaining that because Father was not offered services until the August 10 hearing he had not yet had services for six months. The Agency requested a continued hearing date in early 2023. Father's counsel objected to a finding that reasonable services had been provided, but stated she would not set the matter for contest if the hearing was continued as the Agency had requested.

The court found that reasonable services had been offered or provided, and that Father had not made substantial progress in complying with the case plan. The court ordered reunification services to continue, and scheduled a hearing for February 7, 2022, which would be construed as a combined six-month and 12-month review.

C.    *Twelve Month Review*

On January 27, 2022, the Agency filed a status review report recommending that reunification services be terminated, and that a section 366.26 hearing be set to proceed with a permanent plan of adoption with the current caregiver, with whom Minor had been placed since September 2021. The Agency reported that Father remained incarcerated and had not maintained contact with the Agency. According to the Agency, in October 2021, after Father was transferred to federal prison in Victorville, the social worker mailed another copy of the family reunification paperwork and parenting information to Father at his new location. In October, the social worker also emailed Father's case manager at the prison several times to inquire about services available for Father at the facility, but received no

---

[3] The court provided a break-out room for Father to speak with attorney Bradley before the case was called.

response. In November, December, and January the social worker made further efforts to contact the Father and his case manager by mail, email, and telephone, but received no responses from Father or prison personnel.

The 12-month review hearing, held on February 7, 2022, was conducted by videoconference due to COVID-19.[4] Father was not present, but was represented by attorney Tung, who stated that he had not been able to reach Father, and submitted.[5] The court adopted the Agency's recommendations, and found that reasonable services had been offered and that Father had made no progress in mitigating the causes necessitating placement or made substantial progress in complying with the case plan. The court terminated reunification services and scheduled a section 366.26 hearing for May 31.

The court advised those present, including Father's counsel, that "[a]ny parties seeking to preserve the right to appeal from the order setting the Section 366.26 hearing must first seek a writ, using forms that are available, from the court clerk, except as otherwise provided by law." However, nothing in the record suggests that Father was provided with written notice of the writ requirement by the court clerk, as required by section 366.26, subdivision (*l*)(3)(A), and rule 5.590(b).[6]

---

[4] Subsequent dates are in 2022 unless otherwise stated.

[5] Tung, who was appointed to represent Father on or about the day of the hearing, was apparently under the misimpression that Minor was a girl.

[6] Rule 5.590(b)(2) requires that if a party is not present when the court orders a section 366.26 hearing, "within 24 hours of the hearing, the [writ] advisement must be made by the clerk of the court by first-class mail to the last known address of the party." Rule 5.590(b)(4) requires that the mailed notice be accompanied by copies of the Judicial Council forms that the party must file. The minute order, a copy of which was mailed to Father at Victorville, did not include a writ advisement, and there is no indication in the record that forms were sent to Father.

D.    *Section 366.26 Hearing Continuances; Section 388 Petition*

Father was not present at the May 31 hearing, which was held by videoconference. He was represented by attorney D'Malta, who reported that she was taking the matter over from attorney Tung and requested a continuance on the ground that because of her recent assignment to the case, she had not had the opportunity to speak with Father. The court continued the section 366.26 hearing to June 29.

The June 29 hearing was held by videoconference. Father was not present. Attorney D'Malta requested a further continuance to speak with Father. She reported that after making "countless" phone calls to the Victorville facility since the previous hearing, she had not spoken with anyone until two days ago, and she had a legal call scheduled with Father for the next day. The court continued the hearing to July 7.

Father was not present at the July 7 hearing, which was apparently the first hearing in the matter that was conducted in person rather than under COVID-19 videoconference protocols. Attorney D'Malta stated that Father wanted to be present at the section 366.26 hearing, and that she had found it difficult "maintaining contact or getting into contact with him, due to the facility." The court again continued the hearing, this time to July 25.

Father appeared at the July 25 continued section 366.26 hearing by telephone. That morning, attorney D'Malta had filed a petition under section 388 on Judicial Council form JV-180 asking the court to reinstate reunification services. The court had not received the petition, and stayed the section 366.26 hearing to August 16, to allow for the section 388 petition to be received.

On July 29, Father filed an amended section 388 petition, seeking to change the court's February 7 order finding that reasonable services had

7

been offered or provided and that the extent to which Father availed himself of services was "none." Father stated that he had been incarcerated throughout the case, and had "continuously sought to participate and play an active role in this matter"; that no reunification services had been provided despite the court's order; that the Agency's attempts to engage him had been de minimis; and that he was not present at the February 7 hearing when his attorney failed to object to the termination of services. He asked the court to reinstate reunification services and order the Agency to make "reasonable proactive efforts" to provide services, and stated that the requested order would be better for Minor because Minor "should not be denied of the benefit(s) of knowing his Father, to feel the biological parent-child connection, to be nurtured by and feel his Father's unconditional love and to know he is wanted. For the Father to establish and maintain a meaningful presence in [Minor's] life is critical to the health of [Minor's] cognitive, emotional, and social development."

In its written response to Father's petition, the Agency recommended that the petition be denied because there was no change in circumstances. The Agency outlined the efforts it had taken to engage Father from May 2021 through May 2022, and stated that Father had not remained in contact with the Agency or responded to any of its correspondence regarding services and visits. The Agency's efforts included sending first class mail to Father at Santa Rita Jail and Victorville on several occasions in May, August, September, October, and November 2021, none of which had received a response. From October 2021 through January 2022, the Agency contacted personnel at Victorville, with no response. There were no reported efforts by the Agency after January 2022 until April 28, 2022, when the Agency emailed Father's counselor seeking to arrange for Father to create a

8

visitation plan, and the counselor responded that Father "can mail the Agency visiting form and the Agency can mail them back when complete." The Agency received no response to first class mail it sent to Father at Victorville on April 28, 2022 and in May 2022.

The court scheduled a hearing on whether to grant or deny an evidentiary hearing on the section 388 petition for August 16, the day of the continued section 366.26 hearing.

E.    *August 16, 2022, Hearing*

Father attended the August 16 hearing, first by telephone and later by videoconference. The court asked for argument as to whether an evidentiary hearing should be held, and whether a section 388 petition was the appropriate mechanism for Father to assert a lack of reasonable services. Attorney D'Malta represented that she had learned from Father that at Victorville he was denied phone calls and was not getting his mail regularly from September 2021 to March 2022. She argued that the adequacy of reunification services should have been contested at every stage of the proceeding, and that there had never been any follow-through on the court's orders for visitation. Counsel for the Agency argued that any challenge to the termination of reunification services should have been brought by means of a writ petition; that there was no writ or appeal from the February 7 orders; and that Father had not shown the changed circumstances that are required for a section 388 petition.

After a brief recess to allow for the review of some procedural issues, the court offered its preliminary view that the law did not support granting an evidentiary hearing on reasonable services in view of the fact that at the February 7 hearing, the parties and their counsel had been advised of their right to take a writ, and had also given notice of appellate rights, but no

9

challenge to the order had been brought. Father's counsel noted that Father had not been present at that hearing, and stated that in view of the difficulties she had in getting in touch with Father she had doubts about the extent to which prior counsel had consulted with him.[7]

After a further recess, Father's counsel argued that the petition presented new information about Father's views: while he was at Santa Rita Jail he indicated that he wanted to be part of Minor's life, but from the time of Father's transfer to Victorville up to the filing of the petition Father's views on the proceeding had been unknown because there was no contact with him. Counsel acknowledged that Father's position as to the provision of reasonable services might be better suited to a writ, but contended that a section 388 petition was nevertheless appropriately filed.

The court stated that it was considering the petition, not striking it. Then, based on its finding that Father had not made the necessary prima facie showing under section 388 that there were changed circumstances or new evidence, the court denied the request for an evidentiary hearing as well as the petition. Turning to the section 366.26 issues, the court found by clear and convincing evidence that Minor was likely to be adopted, and terminated parental rights. Father timely appealed.

## DISCUSSION

A.  *Applicable Law and Standard of Review*

Section 388 authorizes a parent to petition the juvenile court to modify an order "upon grounds of change of circumstance or new evidence." (§ 388, subd. (a)(1).) The petition must "state the petitioner's relationship to or

---

[7] Father's counsel did not discuss the court's failure to provide Father the required writ advisement and forms by mail. That issue was raised for the first time on appeal.

10

interest in the child . . . and . . . set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order." (*Ibid.*) The court may summarily deny a section 388 petition without an evidentiary hearing if the petition "fails to state a change of circumstances or new evidence that may require a change of order . . . or fails to show that the requested modification would promote the best interest of the child." (Rule 5.570(d)(1); see also *In re R.A.* (2021) 61 Cal.App.5th 826, 836 (*R.A.*) [discussing grounds for denying an evidentiary hearing].) But a petition must "be liberally construed in favor of granting a hearing to consider the parent's request," and "[t]he parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309-310.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

We review the summary denial of a section 388 petition for abuse of discretion. (*R.A.*, *supra*, 61 Cal.App.5th at p. 837.)

B.    *Analysis*

To begin, we reject the Agency's contention that Father's failure to file a writ petition is fatal to Father's challenge to the termination of reunification services. By statute, a parent must timely file a writ petition to challenge the termination of reunification services when a section 366.26. hearing has been set, and failure to file a petition dooms a challenge to the termination. (§ 366.26., subd. (*l*).)

Here, however, Father was not present at the hearing where his reunification services were terminated, and there is no evidence that the court provided Father with the writ advisement or forms to challenge the termination of services and setting of a section 366.26 hearing. (Rule

11

5.590(b)(2) & (4).)  In light of the juvenile court's failure to provide Father with notice of the writ requirement, we find good cause to consider the merits of his appeal.  (See *In re A.A.* (2016) 243 Cal.App.4th 1220, 1245 [failure to provide "timely and adequate notice" of writ advisement as required by rule 5.590(b) constitutes good cause to excuse failure to file writ petition and consider claim of error on appeal]; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 722 [good cause shown for parent's failure to file writ petition under section 366.26, subd. (*l*) where court fails "to discharge its duty to give . . . timely, correct notice" as required by the California Rules of Court].)

We turn now to the question whether Father made a prima facie showing to require the juvenile court to hold an evidentiary hearing on his section 388 petition.  In the petition, Father stated that he had continuously sought to participate in the matter.  This is new evidence, because, except for the Agency's report that Father did not respond to correspondence it sent, there was no evidence in the record as to Father's attempts to participate in the matter from October 2021, when Father's then-counsel objected to a finding that reasonable services had been provided and the court ordered continued reunification services through the February 2022 hearing where the court ordered the termination of services.  At the February hearing, Father was represented by an attorney who had just recently been appointed for him, who had not spoken with him, who apparently believed that Minor was a girl, and who failed to ask for a continuance to speak with his client.  That attorney was not in a position to offer the court information about Father's positions as to services or anything in light of the circumstances.

Then, at the August 16 hearing where the court denied Father's request for an evidentiary hearing, the court was informed that inmates at Victorville were denied phone calls and regular mail service from September

12

2021 to March 2022 during the COVID-19 pandemic, which might shed light on the Agency's report that neither Father nor prison officials responded to its communications and on reports by Father's attorneys of the difficulties they faced in contacting Father after he was moved from Santa Rita Jail.

Father's section 388 petition also shows that Minor's best interest might be served by changing the February 7 order, in which the court found that reasonable services had been provided and that the extent to which Father availed himself of services was "none": Father contends that even apart from the possibility that his presence in Minor's life would be beneficial to Minor's cognitive, social and emotional development, there is benefit to Minor in knowing that he is wanted.

The circumstances here are unusual. The entire proceeding took place during the COVID-19 pandemic. Father, who was incarcerated throughout the proceedings, was in three different facilities, and was represented by multiple attorneys who had difficulties contacting him, particularly in Victorville. Father has been at Victorville starting in October 2021, and was there during the bulk of the time during which reasonable services were to be offered. From October 2021 through February 2022, when Father's services were terminated, the Agency received no responses to its communications to Father or to prison officials. Father was not present at the February 7 hearing where his reunification services were terminated; the attorney who represented him at that hearing had never spoken to him; and Father was not provided with the required writ advisements for challenging the orders terminating services and setting the section 366.26 hearing, which meant that Father was had no opportunity to timely contest those orders. In these circumstances, where Father's section 388 petition states evidence that casts doubt on the juvenile court's finding that reasonable services were offered or

13

provided and the court's decision to terminate services and set a section 366.26 hearing, we conclude that justice requires Father to be granted an evidentiary hearing on his section 388 petition, even at this late date. We express no opinion as to the outcome of the evidentiary hearing.

## DISPOSITION

The challenged orders are reversed, and the matter is remanded to the juvenile court with directions to promptly schedule an evidentiary hearing as to the merits of Father's section 388 petition, which was filed on July 29, 2022. The court strongly encourages the parties to consider stipulating to the immediate issuance of a remittitur, pursuant to California Rules of Court, rule 8.272(c)(1).

 

 

 

 

 

_____
Miller, J.

WE CONCUR:

_____
Richman, Acting P.J.

_____
Markman, J.[*]

A166037, *Alameda County Social Services Agency v. D.Y.*

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/16/23

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Damari Y., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br>v.<br>D.Y.,<br><br>        Defendant and Appellant. | A166037<br><br>(Alameda County<br>Super. Ct. No. JD-033282-01) |

BY THE COURT:

    The opinion in the above-entitled matter filed on June 12, 2023, was not certified for publication in the Official Reports.  For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.


Dated: _____          _____
                                        Richman, Acting P.J.

1

Court:  Alameda County Superior Court

Trial Judge:  Hon. Tara M. Flanagan

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant

Donna R. Ziegler, Alameda County Counsel; Samantha Stonework-Hand, Deputy County Counsel, for Plaintiff and Respondent

A166037, *Alameda County Social Services Agency v. D.Y.*