Filed 7/10/23  In re Y.M. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Y.M. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B320697 (Super. Ct. No. 20JD-00020) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. A.D., Defendant and Appellant. | |

Father appeals an order pursuant to Welfare and Institutions Code[1] sections 366.26 and 388, terminating parental

---

[1] All statutory references are to the Welfare and Institutions Code.

rights and identifying adoption as the permanent plan for the children.  Mother does not appeal.  We affirm.

FACTS

A.D. (Father) has two daughters, Y.M., born in March 2016, and K.P., born in August 2018, (collectively the children).  In 2018, Father was living with Mother and the children in San Luis Obispo County.

*Domestic Violence Incident*

The family came to the attention of the San Luis Obispo County  Department of Social Services (DSS) in November 2018 when law enforcement responded to a report of domestic violence.  Father admitted that he struck Mother, and he was arrested.  Mother obtained a domestic violence restraining order.  Father pled no contest to two domestic violence misdemeanors but fled to Mexico before sentencing.  A warrant was issued for his arrest on May 22, 2019.

*Detention of Children*

DSS had concerns about Mother's ability to protect and care for her children since September 2019.  On February 6, 2020, DSS received a report that the children were living in unacceptable conditions, their basic needs were not being met, and they were being exposed to domestic violence.

On February 20, 2020, a DSS worker visited the family home.  Mother was present with her children and her then boyfriend.  The home was filthy, in disarray, and smelled strongly of trash.  The only food in the home was a bag of frozen broccoli and a half-gallon of milk.  The home did not have running hot water and the stove did not work.

DSS detained the children in foster care on February 21, 2020.  At the time of the detention the children suffered from

poor hygiene, emitted strong odor, and their feet were covered in dirt.

*DSS Contact with Father*

DSS began an investigation to locate Father. Initially, all Father's relatives would say was that Father was in Mexico.

On February 24, 2020, DSS received Father's contact information from a relative. On the same day, a DSS worker spoke with Father by phone. Father admitted that he moved to Mexico in April 2019 and had not seen his children in over a year.

When informed that his children were being detained from Mother, Father said that he could not return to the United States and that the children could not reside with him in Mexico because of safety concerns relating to a drug cartel. He suggested that the children reside with their paternal grandmother or their paternal aunt Teresa.

Father provided DSS with his mailing address in Ojinaga Chihuahua, Mexico. In addition to the February 24, 2020, initial contact, Father attended by telephone a child and family team meeting with DSS on February 27, 2020, and a telephone conversation with a DSS social worker on March 17, 2020.

*Petition*

On February 24, 2020, DSS filed a petition alleging neglect or failure to protect against both Mother and Father (§ 300, sud. (b)(1)) and failure to support against Father (§ 300, subd. (g)). Notice of the detention hearing was provided to Father by phone on February 24, 2020. Father was designated as an alleged father.

The juvenile court conducted a detention hearing. The court appointed Danielle Plevel as attorney for Father. Plevel, however, was not in court. Attorney Theresa Klein stated she

3

was appearing for Plevel.  Klein also accepted an appointment to represent the children.  Klein, representing Father, submitted on the issue of detention.  The court ordered the children detained.

*Adjudication and Disposition*

Plevel appeared for Father at the combined adjudication and disposition hearing in April 2020.  Plevel said that she had been trying to reach Father by telephone, text, and Whatsapp messages, without success.  Social worker Ashley Totah said Father told her that he moved but he did not know his address.  She asked him to find out and call her back to let her know.  She had not heard from him and has tried numerous times to contact him by phone without success.  The juvenile court noted that mail sent to Father had been returned.

The juvenile court found that Father has had notice of proceedings and made himself unavailable to the court, to DSS, and to his attorney.  The court proceeded without Father.

A DSS report stated that several paternal relatives wanted the children placed with them.  They have begun the process.  However, the family lives in a two-bedroom apartment with other family members and would not meet licensing requirements.  The report noted that the paternal grandmother is seeking other living arrangements so that she can have space for the children.

The report also noted concerns about the family's alleged involvement with a Mexican drug cartel, and that the family may attempt to take the children to Mexico to be with Father.  It is also alleged that paternal family members have been physically and emotionally abusive toward Mother and the children.

The report refers to a telephone call between Father and DSS in March 2020, before DSS lost contact with Father.  Father denied being in a drug cartel, although he previously admitted

4

that he had been involved. DSS asked Father about allegations that a paternal aunt assisted in identifying and coordinating the murder of people in Mexico by sending Father pictures of people for him to murder. Father adamantly denied his sister's involvement but did not deny killing people.

The juvenile court found Father to be an alleged father, sustained the section 300 allegations in the petition, declared the children to be dependents of the court, and ordered their continued placement together in their existing foster home.

*Three-Month and Six-Month Review Hearings*

Father failed to appear at the three-month and six-month review hearings. Mail sent to his last known address was returned and numerous attempts to contact him by telephone were unsuccessful. Father made no attempt to provide his current contact information. Father remained an alleged father. The children were ordered to continue to be placed with their foster parents.

*Nine-Month Review*

A DSS report for the nine month review hearing stated that Father has made no effort to contact DSS and DSS's efforts to contact Father remained unsuccessful. Mother was struggling to consistently engage in reunification services. Meanwhile the children have bonded with their foster family.

DSS recommended that reunification services for Mother be terminated and that the matter be set for a section 366.26 hearing. DSS also filed a petition pursuant to section 388, asking the juvenile court to implement those recommendations.

At the nine month review hearing, held on January 20, 2021, Father appeared for the first time, 11 months after the

children were detained.  Father gave his current phone number and address in Paso Robles, California.

Father told the juvenile court that he and Mother were never married, but they lived together after the birth of both children.  He claimed he always held the children as his own.  Father also claimed that DNA testing done by DSS will confirm that the children are his, and that his attorney will circulate the results when he receives them.  Father asked to be elevated to the status of presumed father.

Father wants the children placed with family members.  He claims family members started the placement process, but the paperwork did not get into the case file, so they are going to restart the process as soon as possible.

The juvenile court postponed any decision to a trial readiness conference scheduled for February 17, 2021.

### Father's Section 388 Petition

In spite of the juvenile court's express order that both parents appear at the February 17, 2021, hearing, Father did not personally appear.  Instead, his attorney appeared for him.

Father objected to DSS's section 388 petition and filed a section 388 petition of his own on March 17, 2021, requesting presumed father status and reunification services.  Father provided copies of DNA testing showing him to be the biological father of the children.

In Father's declaration in support of his petition he denied that he is involved with a Mexican drug cartel.  He explained that a picture of him dressed in a military-type uniform and holding a weapon was taken by the cartel to blackmail him and threaten his family.

6

Father admitted he left the children with Mother in the spring of 2019.  He claimed that he did not keep in contact for their well-being.  He did not want the cartel to know where they were.  Father moved back to the United States in January 2021 and intends to stay.  He does not intend to take the children to Mexico.

DSS opposed Father's petition.  The opposition included statements by Father that he knew about the children's dependency shortly after they were detained.  Although he had notice, he made no effort to visit them, to inquire of their well-being, or to gain custody.

Father testified at the hearing.  He said he is currently on probation from his domestic violence conviction.  He is living with a paternal aunt and is employed as a field worker.

Father said he worked for a drug cartel when he was kidnapped by them from May 2019 to December 2020.  He escaped from the cartel and is currently seeking asylum in the United States.

Father admitted that he had access to a telephone during the time he was allegedly kidnapped.  But said he was not allowed to use it often and could only get messages to one sister.  He said the cartel made him change his phone number.

Father also admitted that he has not spoken to either child; has not sent financial assistance to Mother for the children's care; and has not given money to his relatives to pass on to the children.

The juvenile court denied Father's section 388 petition.  The court declared Father to be a biological father but refused to find him to be a presumed father.  The court found that it had been over one year since the children's detention; Father did not

7

initially request services; Father only requested placement with relatives; Father voluntarily returned to Mexico; Father had conversations with DSS, but never mentioned he had been kidnapped; and the children had been in foster care for an extended period of time.

The juvenile court set a section 366.26 hearing for August 2021. It advised Father of his right to file a writ petition. Father did not file an appeal or writ petition.

*Paternal Aunt and Uncle's Section 388 Petition*

On August 3, 2021, Father's brother and sister-in-law filed a section 388 petition seeking custody of the children. DSS agreed that they met the legal qualifications. But the trauma the children had suffered left them with special needs. The foster parents were meeting those needs. The aunt and uncle did not recognize the children's special needs, asserting they were just normal children. The children's special needs made them particularly vulnerable in the event of a change of custody. DSS was also concerned about the ability of the children's aunt and uncle to set boundaries with Father.

The children's attorney also objected to a change in custody. The children's counsel argued that the children's best interest is to remain with their current foster parents and the foster parents to be designated prospective adoptive parents.

A DSS social worker testified the children have a strong bond with their foster parents who have the skills and ability to meet the children's special needs. Moving them would be chaotic for the children, especially in light of the trauma they have already experienced in their parents' care.

The juvenile court denied the children's aunt and uncle's section 388 petition.

*Father's Motion to Vacate and Writ Petition*

On March 4, 2022, Father made a motion in juvenile court requesting that the court vacate all prior orders in the case. The motion was based on Father's claim that he was not served with adequate notice of the proceeding.

During the hearing on the motion Father's counsel made the following offer of proof:

"[Father's counsel]: Your Honor, the offer of proof is, if called to testify, [Father] would say as to the – I believe there are three meetings alleged – or communications alleged between himself and the county. That he was not advised as to the court hearing or the nature of the hearing. That he did not ever represent that he wanted to give up custody of his children. That he did represent he did not wish the children to be with him when he was in Mexico. And that he further represented that – would represent that he thought the question he responded to in each of these times was, 'Do you want the children placed with family members, your family members, when you are in Mexico?'

"The Court: And his answer to that question was, according to the offer of proof?

"[Father's counsel]: Yes, it would be affirmative according to the offer of proof. . . . Oh, and finally, he would testify that he did not receive any notice of hearings until January of 2021."

The juvenile court asked opposing counsel if they "accepted" the offer of proof. The children's counsel replied, "I believe that's what he would say, Your Honor." DSS's counsel objected that it is not consistent with Father's prior testimony. The court assured counsel that it had a transcript of Father's testimony. Then counsel assented.

9

The juvenile court denied Father's motion to vacate all prior orders. The court stated that Father has waived any objection as to lack of notice by making a general appearance in the case on January 20, 2021, and participating in the case since.

On April 6, 2022, Father petitioned this court for a writ of prohibition/mandate to order the juvenile court to vacate all prior orders. We summarily denied the petition. Father's petition to the Supreme Court was also summarily denied.

### Section 366.26 Hearing

The section 366.26 hearing was held on April 20, 2022. By then the children had been in the care of their foster parents for over two years. The foster parents had been found to be de facto parents.

DSS reported that Father had a total of nine hours visitation with the children. The children call him by his first name except when instructed otherwise by Father. The children have no parent-child relationship with Father. The children view him as a friendly visitor. The children have a secure attachment to their foster parents. Removing them from their foster parents would result in trauma, significant grief, and loss.

Father has an open child support case with a current balance of $5,710.34 due for child support. Father paid $700 in July 2021 and $518 in November 2021. Child support does not continue to accrue because the children are no longer in Mother's custody.

The juvenile court denied Father's request to be elevated to presumed father status, and section 388 petitions by paternal relatives seeking custody of the children.

The juvenile court found that there is no beneficial parent-child relationship between Father and the children, and that the

10

benefits of an adoptive home outweigh any detriment to the children in terminating parental rights. The court found that the children are adoptable and terminated the parental rights of both Mother and Father. The court identified adoption as the permanent plan for the children.

DISCUSSION

*I. Statutes and Standards of Review*

Section 366.26, subdivision (c)(1), provides that if the court determines by clear and convincing evidence that a child who has been found to be a dependent of the court is likely to be adopted, the court shall terminate parental rights, and order the child placed for adoption. We review an order pursuant to section 366.26 for substantial evidence from which a reasonable trier of fact could determine to a clear and convincing evidence standard that a child is likely to be adopted. (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.)

Section 388, subdivision (a)(1), provides that a parent or other person having an interest in a dependent child may petition the juvenile court to change, modify or set aside an order of the court previously made or to terminate the jurisdiction of the court. We review an order denying a petition under section 388 for an abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

As we shall explain, the juvenile court did not abuse its discretion, and the evidence compelled the only result the juvenile court could have reached.

*II. Notice*

Father contends he was denied notice of the proceedings. Father relies on section 316.2. Section 316.2, subdivision (a), requires the court to inquire at the detention hearing as to the

11

identity and address of any presumed or alleged fathers. Section 316.2, subdivision (b), provides in part: "If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the termination of parental rights and adoption of the child."

Here Father was given notice by telephone that the children were being detained. His response was to change his telephone number and address without notifying DSS, his attorney, or the court. Thereafter, numerous attempts by DSS to contact Father by telephone were unavailing, and written notices sent to his former address were returned. Father deliberately absented himself from the process from February 2020 to January 2021. His excuse that he had been kidnapped by a drug cartel is risible. Father cannot make it impossible to contact him and complain he was deprived of notice.

Father attempts to make much of his offer of proof at the hearing on his motion to vacate all prior orders. In the offer he makes the dubious claim that in spite of three telephone conferences with DSS between February 24 and March 17, 2020, including a child and family team meeting, he was not advised of a court hearing or the nature of the hearing. Father claims that the opposing parties agreed with the offer of proof. That is not true. The children's counsel agreed only that the offer reflected what Father would say. DSS's counsel objected that the offer contradicted Father's prior testimony. Far from stipulating to any facts, opposing counsel made it clear that they were

12

contesting the substance of the statements made in the offer. The juvenile court was free to reject part or all of the offer as lacking sufficient verity. On appeal we presume the court rejected the substance of the offer of proof. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.)

Father argues without citation to authority that DSS had the duty to search for him. But after DSS initially contacted Father and advised him of the dependency proceedings, Father deliberately disappeared. All DSS knew was that he was somewhere in Mexico. Father has some parental responsibility. He could not be bothered to fulfill even the minimal responsibility of keeping DSS apprised of his current contact information. DSS had no duty to continually track down a parent who has already been identified, contacted by a social worker, and informed regarding the proceedings. (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441 [once a parent has been located, it becomes the parent's obligation to communicate with the agency].)

Moreover, Father is precluded from challenging the detention, jurisdictional, and dispositional orders.

A dispositional order of the juvenile court is final and appealable. (§ 395, subd. (a)(1); Cal. Rules of Court, rule 5.590(a); *In re A.A.* (2016) 243 Cal.App.4th 1220, 1234.) This means we may not inquire into the merits of a prior final appealable order even when the issues raised involve important constitutional and statutory rights. (*Ibid.*) Here Father did not appeal the dispositional order. He is precluded from attacking the detention, jurisdictional, and dispositional orders on the ground of lack of formal written notice pursuant to section 316.2, subdivision (a), or on any other ground.

13

Father argues that as an alleged father he lacked standing to appeal. But an alleged father has standing to appeal if he appears at the earliest practical point and attempts to join the dependency proceedings. (*In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, 1116-1117.) Here Father had notice of the proceedings. Instead of appearing at the earliest practical point, he rendered himself incommunicado and did not appear for 11 months, well after the dispositional order. If Father lacked standing to appeal, it was his own fault.

Finally, defects in notice may be forfeited when a parent acquiesces to the juvenile court's jurisdiction and actively participates in its proceedings. (*In re B.G.* (1974) 11 Cal.3d. 679, 689; *In re Gilberto M.* (1992) 6 Cal.App.4th 1194, 1198-1200; see *Ex parte Etherington* (1950) 35 Cal.2d 863, 867 [mother's "personal appearance at the [juvenile court] hearing and her participation therein without objection as to the timeliness of the notice to her . . . constituted a waiver of any insufficiency in that respect as a jurisdictional requirement"].)

Here Father appeared on January 20, 2021, without objecting to any defect in notice. Father fully participated in the proceedings, including his filing of a petition pursuant to section 388. He did not challenge any defect in notice until March 4, 2022, more than one year after he first appeared. Father has forfeited any claim of a defect in notice.

*III. Attorney Competence*

Father contends he was not provided competent counsel. We need not discuss each allegation of incompetence individually. Suffice it to say, if there was incompetence, it was harmless by any standard.

14

First, as we have explained, Father is precluded from raising claims of incompetency that occurred prior to and including the order of detention.

Second, Father had the burden of establishing facts to support that he was entitled to presumed father status. (*In re T.R.* (2005) 132 Cal.App.4th 1202, 1210 ["One who claims he is entitled to presumed father status has the burden of establishing, by a preponderance of the evidence, the facts supporting that entitlement."].) Voluntarily absenting himself from participation in the case, including failing to contact his attorney, limited her ability to act to raise his status. An attorney is not obligated to guess what her client wants her to do. He cannot blame his attorney when she did not know whether he would want to be designated as a presumed father.

In addition, to qualify as a presumed father, a father must promptly come forward and demonstrate his full commitment to his parental responsibilities – emotional, financial, and otherwise. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849.) The juvenile court must consider all relevant factors, including the father's conduct *both before and after* the child's birth. (*Ibid*.) A father must promptly assume his parental responsibilities, including a willingness to assume full custody of the child. (*Ibid*.)

The trial court had good reason for not finding Father to be a presumed father. Father abandoned his children by fleeing to Mexico to avoid prosecution for domestic violence in California. He had not contacted the children in over a year when DSS called to inform him that the children were subject to dependency proceedings. Instead of promptly demonstrating a willingness to assume full custody, Father told DSS that he would not leave Mexico and that the children could not reside with him there.

15

Then Father changed his telephone number and address so that DSS could not contact him. He remained away for another 11 months while his children were in foster care and the dependency case was proceeding.

Father provided little or no financial support for the children. During the dependency proceeding, there was an open case seeking back support payments from Father.

Finally, the agency did assess the paternal relatives for placement even while he remained an alleged father. The relatives reported that they had not seen the children for a year. Placement was not approved with paternal aunt Teresa and paternal grandmother because their housing "would not currently meet the requirements" for placement. Paternal aunt Maria B. and her husband Jose expressed interest in placement, but Jose would not have passed a background check and they withdrew their application for placement. Mother objected to the girls being placed with paternal relatives because they had previously mistreated the children and Mother, and she wanted her children to remain in their foster home. There were also concerning reports that the paternal family was involved with a drug cartel in Mexico and that they may try to take the children to Mexico where Father resided. Given Mother was to receive reunification services, placement with the relatives was a concern because they did not speak to Mother and did not get along with her which would make reunification for Mother very difficult. Later, when Father appeared, he reported he was living with paternal aunt Teresa and paternal grandparents which would prevent placement with those relatives. Finally, even after paternal aunt Adriana and Uncle Ascension were reported to have had appropriate visits with the children, and even though DSS

16

recognized that for "some children it may be in their best interest to move from a Resource Family Home to a relative home, this is not the case for [K.P.] and [Y.M.]." There was good reason not to move the children from their foster home. There is no support in the record that the paternal relatives were not properly assessed for placement merely because the father remained an alleged father. But even if that was true, again, Father's status as an alleged father was solely the result of his failure to participate in the case.

The children were young when they were placed with their foster parents. Y.M. was three years old and K.P. was about 18 months old. K.P.'s foster family was the only family she knew. If Y.M. had any memory of living with another family, the memory would likely be dim and remote. The children were thriving in their placement with their foster family. They felt safe and loved. The children have special needs to which their foster parents are attentive. The children are bound to their foster parents, and their special needs make them particularly vulnerable in the event of a change in custody. The juvenile court could not remove the children from a loving and stable home and send them to live with relatives whose relationship with the children is marginal at best.

Counsel, no matter how competent, can only do so much when the facts point to a single conclusion. Here the facts compelled only one rational conclusion: terminate Father's parental rights and allow the children to be adopted by their foster parents. It would have been a gross abuse of discretion for the court to order any other result.

17

DISPOSITION

The judgment (order) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

18

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Pamela Deavours, under appointment by the Court of Appeal, for Defendant and Appellant.

Gordon-Creed, Kelley, Holl, Angel and Sugerman, Jeremy Sugerman and Anne H. Nguyen for Plaintiff and Respondent.